**PRATER et al. v. STOREY. (No. 2703.)**

(Court of Civil Appeals of Texas. Texarkana. March 1, 1923.)

**1. Injunction ⊂⊐85(2)—Court has jurisdiction of suit to restrain enforcement of void ordinance.**

In a suit to enjoin enforcement of an order suspending plaintiff's license to operate an automobile for hire on the ground that the ordinance authorizing the order was invalid, *held*, that the court had jurisdiction to determine whether an injunction should be granted so far as it was alleged in the petition that the ordinance was void, and that its enforcement would result in an injury to and destruction of plaintiff's property right of doing an authorized business.

**2. Licenses ⊂⊐36—License to operate automobile for hire held special privilege and not contract nor vested right.**

A license issued by a city to operate an automobile for hire *held* in the nature of a special privilege required as a condition precedent to the licensee's right to carry on his business, and not a contract nor a fixed right to do business.

**3. Licenses ⊂⊐38—Revocation of license to operate automobile for hire authorized on ground of "misconduct."**

Where a city ordinance authorized revocation of licenses for operation of automobiles for hire on the ground of misconduct, the city manager had authority under such ordinance to revoke the license of a licensee charged with hauling passengers for immoral purposes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Misconduct.]

Appeal from District Court, Smith County; J. R. Warren, Judge.

Suit by Walter Storey against U. W. Prater and others for an injunction. A temporary injunction was granted, and defendants appeal. Reversed and rendered.

The appeal is from an order of the district judge made at chambers granting a temporary injunction. The appellee filed a petition praying for an injunction restraining appellants, who are respectively the city manager, the city attorney, and the chief of police of the city of Tyler, from enforcing an order of the city manager suspending his license or permit to operate an automobile for hire. The petitioner claims interference in and deprivation of the right to the free pursuit of his business, predicated upon the invalidity of the ordinance herein below set

out. The case was submitted to the judge on the petition and the answer.

It appears that the city of Tyler is a municipal corporation created and existing by virtue of the general laws of the state, having, on the 6th day of April, 1915, adopted a charter under the provisions of Acts 1913, p. 307 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i). It has the commission form of government, with a city manager as the chief administrative officer. The charter, it appears, specially provides, among others, the following particular powers of the city of Tyler:

"May license and regulate persons, corporations and associations engaged in any business, occupation, profession, or trade, and may define, prohibit, abate, suppress and prevent all things detrimental to the health, morals, comfort, safety, convenience and welfare of the inhabitants of the city and all nuisances and causes thereof."

"May assess, levy and collect taxes for general and special purposes on all the objects or subjects which the city may lawfully tax."

"May regulate and control the use for whatever purpose, of the streets and other public places."

"May make and enforce local police, sanitary and other regulations, and may pass such ordinances as may be expedient for maintaining and promoting the peace, good government and welfare of the city, and for the performance of the functions thereof."

The charter further provides:

"Sec. 11. The commission shall consist of unpaid members, and shall elect its own chairman. The commission shall meet once a month, and oftener on the call of the manager, as hereinafter provided for, or on the call of two commissioners. The commission shall see that all ordinances necessary and proper for carrying out the powers and duties herein specified are passed, and that they are enforced by the manager."

"Sec. 3. The commission shall constitute the governing body, with powers as hereinafter provided to pass ordinances, adopt regulations, and appoint a chief administrative officer to be known as the 'city manager,' and exercise all powers hereinafter provided."

"Sec. 46. The powers and duties of the city manager shall be:

"(a) To see that the laws and ordinances are enforced;

*  *  *  *  *  *  *

"(g) To perform such other duties as may be prescribed by this charter or be required of him by ordinance or resolution of the commission."

"Sec. 12. The city manager shall be the chief executive officer of the city."

An ordinance duly adopted by the commission provided for and required the issuance, on payment of a specified sum of money, of a license, for the period of one year, to a person to operate an automobile for hire in the city of Tyler. The following ordinance was duly adopted by the commission:

"An ordinance authorizing and directing the city manager to suspend the license and service of any operator of any vehicle for hire in the city of Tyler guilty of misconduct; providing for a hearing before the commission and procedure therefor; providing for the refund of the unexpired portion of the license of such operator; making it unlawful for any operator to operate any vehicle for hire in the city of Tyler after his license or service shall have been revoked; providing for a penalty and providing for an emergency.

"Section 1. That hereafter the city manager be, and he is hereby, authorized and directed to suspend the permit or license of any owner or operator of any vehicle for hire in the city of Tyler, or order any employee of any such license holder to discontinue driving a vehicle for hire, when such owner, driver, operator or employee shall have been drunk, or shall have violated any of the traffic ordinances of said city, or shall have been guilty of misconduct or recklessness which, in the opinion of the city manager, unfits him for such service to the public; when, in his discretion, the city manager deems it necessary or advisable to suspend the license of any such person, or orders any such employee to discontinue such service, he shall give notice to such person in writing signed by him, that the license of such person is suspended, or that the employee is so ordered to suspend such service, as the case may be, stating the reason therefor, and such notice shall be served either personally or deposited in the mail; such notice shall be accompanied by a specification of the charges against him by the city manager and a notice of the time and place of the next regular meeting of the commission, at which time such person may appear before the commission and contest such charge or charges, having the right to introduce evidence and be heard personally and by counsel; if such charge or charges, in the opinion of the commission, be not sustained, the commission may, by order entered upon its minutes, set aside the city manager's order of suspension of such license, or order suspending such employee from such service; if such charges, in the opinion of the commission, be sustained, the commission may, by order entered upon its minutes, revoke such license or make permanent such order of the city manager suspending such employee from such service, and the same shall be final and no appeal allowed therefrom.

"A copy of such notice accompanied by a voucher or check of the city of Tyler making a refund to any such license holder of an amount bearing the proportion to the original amount paid for such permit or license as the unexpired portion of such permit or license, if any, bears to the period for which it was issued, shall be served on such person, but the failure to make such refund at such time, or the failure or refusal of such person to accept the same, shall not affect the order or notice revoking said permit or license.

"Section 2. That after the license of any such person shall have been revoked by the city manager, or after such employee is so ordered to suspend such service by the city manager, and before the same is set aside by

the commission, or after the commission has sustained the city manager's action in such case, it shall be unlawful for any such person to operate any vehicle for hire or offer to do so on any street, avenue or alley of the city of Tyler and any such person convicted of doing so shall be deemed guilty of a misdemeanor and shall be fined in any sum not less than ten nor more than two hundred dollars.

"Section 3. That there is now no provision in the ordinances of the city of Tyler authorizing and empowering the city manager to suspend the license or service of any operator of a vehicle for hire upon misconduct, and as the safety of the public demands such a provision, an imperative public necessity and emergency exists, and is hereby declared, and this ordinance shall take effect and be in force from and after its passage, approval and publication.

"Passed and approved at an adjourned regular meeting of the commission of the city of Tyler, Texas, held in the commission chambers on the 8th day of July, A. D. 1921."

The above ordinance is the one involved in this injunction. There was issued to the appellee a license to operate an automobile or service car for hire on the public streets of the city of Tyler for the period of a year from March 15, 1922. On December 1, 1922, the city manager of the city of Tyler, in virtue of the authority and power invested in him by a general ordinance of the city, made an order declaring the license issued "to be suspended indefinitely." The city manager then gave to appellee, and he received, the following written notice:

"Tyler, Tex., December 21, 1922.

"Mr. Walter Story, Tyler, Texas—Dear Sir: Under date of July 8, 1921, the city commission passed an ordinance authorizing and directing the city manager to suspend the license and service of any operator of any vehicle for hire in the city of Tyler guilty of misconduct; providing for a hearing before the commission and procedure therefor; providing for the refund of the unexpired portion of the license of such operator; making it unlawful for any operator to operate any vehicle for hire in the city of Tyler after his license or service shall have been suspended or revoked, and providing a penalty.

"You will remember that on April 7, 1922, you were brought before the commission for hauling passengers for immoral purposes. At that time, you promised to discontinue such service if you were permitted to continue to operate. The commission, believing that you would make your promise good, agreed for you to continue to operate your car for hire so long as you did not engage in immoral traffic.

"I have in my possession a statement signed by [the name is here written] stating that about the latter part of October, 1922, you met her at the St. Charles Hotel and took her out about four miles north of Tyler to meet a man, and about two weeks later you took her out to meet the same man; also that you had carried her out to meet other men about three different times.

"In view of these facts and by virtue of the power vested in me, as city manager, in above ordinance, I hereby declare license issued to you under date of March 15, 1922, to be suspended indefinitely. If you should operate your car for hire after to-day, December 21, 1922, you will be subject to the penalties provided in the ordinance.

"The commission will meet in regular session January 5, 1923, at which time you may appear and protest this suspension, if you see fit.

"Yours very truly,
        "U. W. Prater, City Manager."

On December 23, 1922, the city attorney filed a complaint charging appellee with operating a service car for hire after the license or permit had been suspended. The appellee then filed this suit for injunction on December 23, 1922.

Troy Smith, of Tyler, for appellants.

Gentry & Gentry, of Tyler, for appellee.

LEVY, J. (after stating the facts as above). [1] The principal questions to be considered on this appeal are that of whether or not the ordinance in question is entirely valid and within the police powers of the city of Tyler to enact and enforce, and the jurisdiction of the court to entertain this petition for injunction. The trial court was not without jurisdiction to hear and determine whether or not an injunction should be granted so far as it was alleged in the petition that the ordinance was void and its enforcement would result in an injury to and a destruction of the applicant's property right of doing an authorized business. City of Houston v. Richter (Tex. Civ. App.) 157 S. W. 189; Auto Transit Co. v. City of Fort Worth (Tex. Civ. App.) 182 S. W. 685. In considering the next proposition we are not concerned with the particular merits of the suspension, but only with the principles of law which are involved in a consideration of the validity of the ordinance. The effect of the ordinance in question is, in part, to authorize and direct the city manager to suspend the license of any owner or operator of any vehicle for hire in the city of Tyler when such owner or operator is guilty of drunkenness, misconduct, or reckless violation of the traffic ordinances. Legislation of the character embraced in the general scope of this ordinance as to the suspension or revocation of the license or permit is ordinarily sustained upon the ground that the municipality has authority, under its general police powers, to provide all reasonable regulations that may be necessary affecting public health, public safety, or morals, and, with this object in view, to provide for the revocation of the license or permit of all persons whose practices, character, or misconduct renders them unfit to engage or remain in the particular pursuit. It is not a matter of doubtful opinion that drunkenness, misconduct, or reckless violation of

traffic ordinances, which are matters of conduct specified in the ordinance rendering the person liable to the penalty of suspension or even revocation of his license, apply to matters of conduct which directly bear upon and affect the safety and morals of the community in the operation of vehicles on the public streets. And, referring to the city charter, there is specially conferred the authority "to license and regulate persons, corporations and associations engaged in any business," and also "to regulate and control the use for whatever purpose of the streets and other public places." Under these provisions it is evident that full power is lodged in the municipality to enact ordinances regulating both "persons" engaged in the "business" of running vehicles, including automobiles, for hire, and the use of the streets by such persons, in the interest of the safety and morals of the citizens of the community. An ordinance was so enacted by the city commission, the legislative body of the city, providing for a license fee which was imposed upon the privilege of exercising the vocation or business of operating a vehicle, including an automobile, for hire. The effect of such ordinance, and it is so determined, is to levy the license fee as a means of controlling or limiting the exercise of the particular vocation or business, or, in other words, as a police regulation.

[2] Therefore the appellee's license issued to him on the payment of the required sum of money was in the nature of a special privilege required as a condition precedent to the right to carry on his business, and was not either a contract or a vested right to do the business. 17 R. C. L. p. 476, § 5. The privilege, then, was taken by the appellee subject to any existing law or proper regulations thereafter enacted. It is conceded that the power to grant a license to exercise a particular vocation implies and includes the authority to suspend or revoke it. The instant ordinance, attacked in this appeal, was exacted by the city commission in the exercise of the authority to suspend or revoke licenses granted. The ordinance is specially attacked, it seems only so far as it empowers the city manager to suspend, in the first instance, the license for the causes stated. The city commission has not delegated to the city manager any legislative powers. The action of the city manager in passing on the suspension is not even judicial in character. Spurgeon v. Rhodes, 167 Ind. 1, 78 N. E. 228; Meffert v. State Board of Medical Registration, 66 Kan. 710, 72 Pac. 247, 1 L. R. A. (N. S.) 811, affirmed 195 U. S. 625; State Board of Health v. Roy, 22 R. I. 538, 48 Atl. 802. The duties imposed upon the city manager are mere executive and ministerial acts to be performed in the execution of the ordinance. The city manager is required and authorized merely to act uniformly on a given state of facts, in a prescribed manner, in obedience to the ordinance, without dependence on the exercise of judgment as to the propriety of doing so. The charter grants the city manager the authority and power to do and perform the following:

"(a) To see that the laws and ordinances are enforced.

    *    *    *    *    *    *    *    *

"(g) To perform such other duties as may be prescribed by this charter or be required of him by ordinances or resolution of the commission."

And the charter does not provide that only the city commission, as a body, shall do the acts the city manager is authorized to do in the ordinance in question. It is true that the ordinance authorizes the city manager to suspend the license whenever the specified state of facts or any one of them happens, and without a trial. The ordinance, though, is not for such reason invalid, for the ordinance intends the suspension of the license, not as a punishment or because the causes named constitute a public offense, but as a means of protection to the citizens of the community. Such causes named, as drunkenness, misconduct, and reckless violation of traffic rules, affect the qualification of the operator of the vehicle or the automobile. The acts of drunkenness or misconduct may be while operating the vehicle or an automobile, or may occur when not operating it; yet his qualifications as to whether or not he is a proper person to continue operating a vehicle or automobile are involved. The question is simply one of the right of the public safety or morals. The licensee has no contract, but only a privilege so subject to proper conduct in the pursuit of the business. If the city manager should suspend a license without doing so in the particular manner provided in the ordinance, or under circumstances as would indicate improper motive, or erroneous information as to happening of the given fact, ample remedy is afforded to redress the wrong, for the ordinance expressly provides for an early trial before the city commissioners sitting as a board for the purpose.

[3] The fact that the ordinance does not define "misconduct" is only a minor detail that could not be held to vitiate the whole ordinance. "Misconduct" fixes at least a practicable standard of unfitness, without danger of undue harshness. The word is sufficiently broad to cover the charge or complaint against the appellee which the city manager acted upon in this case. In a given case, though, it may be that the clear evidence may make the act charged not "misconduct" as the word would commonly be defined.

It is concluded that the petition does not authorize the granting of a temporary in-

junction, and the judgment is reversed, and judgment is here rendered denying the applicant a temporary injunction. Appellee will pay costs of appeal.