## EX PARTE LUIS LUNA.

No. 7924. Delivered November 26, 1924.

No motion for rehearing filed.

The relator was prosecuted for violating an ordinance of the city of El Paso, and seeks relief by way of a writ of *habeas corpus*, originally presented to this court. The ordinance is one prohibiting the operation upon the streets of the city of El Paso, of a motor bus or jitney. The ordinance is held, valid. See the court's opinion for an exhaustive discussion of the subject and citation of authorities.

An original proceeding by *habeas corpus,* presented in the Court of Criminal Appeals of Texas at Austin.

Testing the validity of an ordinance of the city of El Paso, prohibiting the operation of motor bus, or jitney, in said city.

*Victor C. Moore,* for relator.

*Walter H. Scott,* City Attorney, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The relator was prosecuted for violating an ordinance of the City of El Paso, and seeks release by way of writ of *habeas corpus* upon the ground that the ordinance upon which the prosecution is founded is invalid. The first two sections of the ordinance read thus:

"Section 1. That from and after this date it shall be unlawful for any person, firm or corporation to operate upon the streets of the city of El Paso a motor bus or jitney."

"Section 2. By the term 'motor bus' is meant and included any automobile, automobile truck or trackless motor vehicle engaged in the business of carrying passengers for hire within the city limits of the City of El Paso, commonly called 'jitneys,' which is held out or announced by signs, writing, device or advertising, to operate or run, or which is intended to be operated or run, over a particular street or route, or to any particular or designated point or between any particular point or to or within any designated territory, district or zone or between any designated termini; provided, that automobiles used exclusively as hearses, ambulances, delivery cars, sightseeing buses, hotel buses, taxicabs and touring cars, operated upon the public streets from a public stand or from a garage upon telephone calls and which have no specified route of travel, shall not be construed as motor buses or jitneys within the meaning hereof."

The attack is based upon the ground that in prohibiting the operation of "jitneys" the power of the city is exceeded, and that giving effect to Section 5 of Article 11 of the State Constitution conferring upon cities the power of self-government, the ordinance is unreasonable.

El Paso, a city of more than 5,000 inhabitants, is chartered under the enabling act. See page 307, Acts of 1913, and Chap. 17, Title 22, Vernon's Complete Stat., 1920. The provisions of the charter touching the authority of the governing body of the city over the streets are, in substance, that embraced in the enabling act mentioned in Arts. 1096c, 1096d and 1096e, R. S.

Among the provisions of the Charter of the City of El Paso are the following.

"Sec. 37. No railroad company, street, steam, nor other kind, no telephone, telegraph, electric light, gas company, nor company of any kind, nor person, nor corporation shall ever occupy or use the streets, highways or public places of the City of El Paso for any purpose whatsoever, without first obtaining the consent of the City Council evidenced by the ordinance duly enacted, etc."

"Sec. 56. The City Council shall have complete and exclusive control and power over the streets, alleys and highways of the city, and to abate and remove encroachments thereon."

"Sec. 97. To prevent the encumbering of the streets, alleys, sidewalks and public grounds with carriages, wagons, carts, hacks, buggies or vehicles of whatsoever kind, etc."

"Sec. 100. To license, tax and regulate hackmen, draymen, omnibus drivers and drivers of baggage wagons, porters and all others pursuing like occupations with or without vehicles."

Giving effect to the legislative act and the charter mentioned, it would seem that the City of El Paso, acting through its constituted authority, would have as great power over its streets, so far as relates to their use by vehicles, as would the Legislature.

The general subject involved in the present inquiry has been before the courts so often in recent years that many precedents are available, both in our own and other jurisdictions. The "jitney" has become recognized as a common carrier, and is thus defined by some of the law writers.

"The 'jitney' may be defined to be a self-propelled vehicle, other than a street car, traversing the public streets between certain definite points or termini, and as a common carrier conveying passengers at a five-cent or some small fare, between such termini and intermediate points, and so held out, advertised, or announced." (Berry on the Law of Automobiles, Sec. 1512.)

See also Memphis v. State ex rel., 133 Tenn. 83, 179 S. W. Rep., 631; L. R. A. 1916B, 1151; Dresser v. Wichita, 96 Kan. 820; Smith v. State, 130 Md. 482; Karnitsky v. Machanic, 109 Atl. 303; Anderson v. Fidelity & Cas. Co., 228 N. Y. 475, 127 N. E. 584; McDorman v. Dunn, 101 Wash. 120; Lutz v. New Orleans, 235 Fed. 978; Houston v. Des Moines, 176 Iowa 455.

The authority of the municipalities to enact restrictive ordinances affecting jitneys has been upheld by the courts of this State upon many occasions. Instances are collated in the opinion in the case of City of San Antonio v. Fetzer, 241 S. W. Rep., 1034. See Ex parte Parr, 82 Texas Crim. Rep., 525; Greene v. City of San Antonio, 178 S. W. Rep., 6; Peters v. City of San Antonio, 195 S. W. Rep., 989; City of San Antonio v. Fetzer, 241 S. W. Rep., 1034; Gill v. City of Dallas, 209 S. W. Rep., 209; City of Dallas v. Gill, 199 S. W. Rep., 1144. It has been definitely stated in several cases in this State that there exists no inherent right in any individual or corporation to operate jitneys upon the public streets. See Green v. City of San Antonio, 178 S. W. Rep., 6; Peters v. City of San Antonio, 195 S. W. Rep., 989. Concerning that declaration in the case of Greene v. City of San Antonio, supra, it was said in a recent opinion:

"The court below, and counsel, have taken much pains to discredit the effect of those two decisions by arguing at great length that the holding therein that persons or corporations situated as appellee have no inherent or vested rights in the use of the city streets for the purpose of plying their trade thereon was not necessary to those decisions, and was therefore *obiter dictum*. But, as we view those cases, that holding was the very foundation of those decisions, and was fundamentally essential thereto. The decision in the Green Case, which has been approved by the Supreme Court of Texas, by the refusal of a writ of error has been cited in 25 different cases in this country which have come to our notice, and in not a single instance did it occur to the courts handing down those decisions to suggest that the holding in question was dictum." (City of San Antonio v. Fetzer, 241 S. W. Rep., 1037.)

The case of Cummins v. Jones (79 Ore. Rep. 276), decided by the Supreme Court of Oregon, is deemed pertinent. From it the following quotations are taken:

"There is, then, but one question for us to consider, and that is: Has the city the power to prohibit the owners of jitney cars from carrying on their business upon its streets? In the case of Greene v. City of San Antonio (Texas Civ. App.), 178 S. W., 6, Mr. Chief Justice Fly, in passing upon a 'jitney' ordinance, says:

"No man has the right to use a street for the prosecution of his private business, and his use for that purpose may be prohibited or regulated as the state or municipality may deem best for the public good. * * * In the case of Fifth Avenue Coach Co. v. City of New York, 194 N. Y. 19 (86 N. E. 824, 16 Ann. Cas. 695, 21 L. R. A. (N. S.) 744), it was held * * * that the city had the authority to grant or withhold the right to run coaches on the streets.'"

Again quoting from the same opinion:

"So in this case appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given."

This case is cited with approval in Le Blanc v. City of New Orleans, 138 La. 800 (70 South. 212). The same doctrine is announced in the case of Dickey v. Davis (W. Va.), 85 S. E. 781 (L. R. A. 1915F, 840), from which we quote as follows:

"The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former the extent of legislative power is that of regulation; but as to the latter its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities; citing Jersey City Gas Co. v. Dwight, 29 N. J. Eq. 242; McQuillan, Mun. Corp., 1620.

"Our attention has not been called to any authorities to the contrary. We conclude, therefore, that since the ordinance in question is purely prohibitory, and cities have the undoubted right to prohibit such use of their streets, the demurrer should have been sustained. A decree will be entered here sustaining the demurrer and dismissing the suit."

In Ruling Case Law, Vol. 6, p. 399, Sec. 394, it is said:

"It is a general rule that legislation which affects alike all persons pursuing the same business, under the same conditions, is not such class legislation as is prohibited by constitutional provisions. * * * The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions."

See also City of New Orleans v. Le Blanc, 139 La. 135; Ex parte Parr, 82 Texas Crim. Rep., 529; Dickey v. Davis, 85 S. E. 781, L. R. A., 1915F, 840; Tiedeman on Mun. Corp., Sec. 299; Davis v. Massachusetts, 167 U. S. 43, 42 L. Ed. 71.

Our examination of the declarations of both text-writers and courts force the conclusion that in the enactment of the ordinance in question the city of El Paso was within its charter powers and did not transcend constitutional limitations, either in interdicting the use of its streets by jitneys or by putting them in a separate class.

The order of the court refusing to discharge the relator is affirmed.

*Affirmed.*