VINCE PARSONS ET AL V. CITY OF GALVESTON ET AL.

No. 6400.   Decided July 10, 1935.
(84 S. W., 2d Series, 996.)

*J. L. Darrouzet, H. M. Oster, J. L. McKenna,* all of Galveston, for plaintiffs in error.

The ordinance in question being invalid the court should have overruled the general demurrer and held that plaintiffs had a good cause of action. Bielecki v. City of Port Arthur, 12 S. W. (2d) 976; Dobbins v. Los Angeles, 195 U. S., 235.

*Bryant Williams,* City Attorney of Galveston, for defendant in error.

The plaintiffs have no inherent or vested rights to the use of the city's streets in the conduct of its business of operating taxicabs, and the ordinance in question, being within the legal delegated powers of the City of Galveston, is valid. Gill v. City of Dallas, 209 S. W., 209, writ of error denied; Packard v. Bunton, 264 U. S., 140, 44 Sup. Ct., 257; Davis v. City of Houston, 264 S. W., 626.

MR. PRESIDING JUDGE RYAN delivered the opinion for the Court.

The question to be determined is the validity of an ordinance of the City of Galveston prescribing minimum fares to be charged by "any person in charge or control of or engaged in the operation of any automobile, taxicab, motor bus, or similar vehicle, devoted to or used in the carriage of persons for hire over the streets of and within the limits of the City of Galves-

ton." The ordinance declares it unlawful to charge or receive for the carriage of any passenger not exceeding five in such vehicle, less than twenty-five cents for each trip, between points within a certain district, and fifty cents between points without such district, and provides that nothing contained therein shall be taken as permitting any charge or fare in excess or greater than the maximum charge or fare prescribed by existing ordinances of the city. Such ordinance is copied in the margin (a).

Vince Parsons and G. E. Metcalf, doing business in the City of Galveston, under the name of the "Dime Taxi Service," sought injunctive relief against the city, its mayor and commissioners, its chief of police and city attorney, restraining the enforcement of said ordinance and interference in any manner with plaintiff in the operation of their taxicab business, challenging the constitutionality of said ordinance as violative of Sections 3, 16, 19 and 26, Article 1, and Section 5 of Article 11 of our State Constitution, and of the 14th Amendment to the Constitution of the United States, in that the ordinance unreasonably interferes with the rights of property as guaranteed by said constitutional provisions, and specifically the constitutionality of Section 1 of the ordinance, because, (1) plaintiffs are engaged in a lawful occupation with a great amount of money

---

(a)   AN ORDINANCE prescribing the minimum fares or charges for the carriage of passengers for hire in the City of Galveston in any automobile, taxi-cab, motor bus or similar motor vehicle devoted to or used in the business of carriage of passengers for hire on the streets of and within the limits of the City of Galveston.

BE IT ORDAINED by the Board of Commissioners of the City of Galveston:

Section 1.   That it shall hereafter be unlawful for any person in charge or control of or engaged in the operation of any automobile, taxi-cab, motor bus or similar motor vehicle devoted to or used in the carriage of persons for hire over the streets of and within the limits of the City of Galveston to charge or receive for the carriage of any passenger in such vehicle any fare or charge or compensation less than the following:

For the carriage of any number of passengers not exceeding five between points in that portion of the City of Galveston lying between Sixth Street and Fortieth Street, Twenty-five cents (25c) for each trip.

For the carriage of any number of passengers not exceeding five between points one or both of which being without the above mentioned district, fifty cents (50c) for each trip.

Provided, however, that nothing herein contained shall be taken as permitting any charge or fare in excess or greater than the maximum charge or fare prescribed by existing ordinances of the City of Galveston.

Section 2.   That any person who shall violate any provision of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not exceeding Twenty-five Dollars ($25.00).

Section 3.   That this ordinance shall take effect upon its due publication as prescribed by the charter of the City of Galveston. (Adopted April 28, 1932).

invested therein and the ordinance has infringed their right to the use of the property so invested; (2) the ordinance tends to create a monoply in favor of the large taxicab companies in that they will then operate under a rate yielding a larger return than they are entitled to, to the detriment of the public at large; (3) the ordinance tends to restrain trade and stifle competition, in that the smaller companies who are unable to compete with the larger companies will be put out of business, and interferes with the free right of trade in the service of the public, and tends to regulate and fix a rate which will prevent and stifle competition; and (4) the ordinance abridges the right of contract in that it prevents a free and untrammeled contract between operators of automobiles for hire and the public at large, the contract being for the benefit rather than to the detriment of the public.

It appears from the allegations of the petition that plaintiffs had set a price of ten cents for the carriage per person to any part of the city within the district for which the ordinance fixes the minimum of twenty-five cents, and a minimum of twenty cents for carriage between points, one or both of which are without said district.

The trial court upon hearing for the issuance of a temporary injunction, denied the same and sustained the defendants' general demurrer to the plaintiffs' petition, from which order, plaintiffs prosecuted an appeal to the Court of Civil Appeals for the First Supreme Judicial District, where the judgment below was affirmed. 53 S. W. (2d) 160.

In their application for writ of error plaintiffs in error concede the right of the city to regulate taxicab fares by setting a maximum to be charged, as being within its police power of protecting the public in the transportation of passengers for hire. They concede also, the city's right to regulate taxicabs by enacting ordinances requiring bond to indemnify for personal injuries, and by any other reasonable regulation.

Under the Enabling Act (Chap. 13, Title 28, par. 21, Rev. Stat. 1925), cities, like Galveston, are given the power to regulate, license and fix the charge or fares made by any person owning, operating or controlling any vehicle of any character used for the carrying of passengers for hire or the transportation of freight for hire on the public streets and alleys thereof. This provision was adopted by the city as provided under the Home Rule Amendment to the State Constitution, in Sec. 1c of its charter as follows, "The City shall have all powers that are or may hereafter be granted to municipalities by the Con-

stitution or laws of Texas; * * *."

The State has therefore delegated to the City of Galveston full power with reference to the regulation and fixing of fares of persons using its streets intra-city as carriers of passengers for hire. The main, in fact the only serious, attack upon the validity of the ordinance is on the proposition that the city can not legally set a minimum fare for the transportation of passengers for hire, binding upon the carrier who is willing to carry for less than such a regulatory fixed minimum, on the theory that rate fixing regulations must take into consideration the interest of the public, and the lower the rate the more it is to the interest of the public; therefore, say plaintiffs in error, the owner's right to contract with the public for a lower rate than the fixed minimum, is impaired and the police power can not be invoked to prohibit a particular use of private property, towit:—their taxicabs and automobiles for hire, "unless such use reasonably endangers or threatens the public health, safety, comfort and welfare."

In Stephenson v. Binford, 53 Fed. (2d) 509, at p. 514, Judge Hutcheson said:—"Standing out in decisions, text-books, and law articles is the universally accepted doctrine that the use of the public roads for the conduct of business thereon, whether by common or by private carriers, is an extraordinary use, and as such is enjoyed, not as a right, but as a privilege. That the State may altogether exclude hauling by carrier, common or contract intrastate, from its roads, is generally taken for granted. The difficulties of the states have arisen where, choosing a middle course between exclusion altogether and permitting unbridled use, they have sought to impose conditions upon private carriers the same as, or analogous to, those imposed upon common carriers, and here its difficulty has arisen, not out of efforts to regulate the manner of the use of the highways, but by controlling rates and practices to regulate the business done thereon."

In that case an attack was made upon Chap. 277, House Bill 335 (Vernon's Ann. Civ. Stat. Art. 911b) which among other powers given the Texas State Railroad Commission was that of fixing maximum or minimum, or maximum and minimum rates, fares, and charges, by carriers of freight over State highways; the act was sustained by the court below. The case reached the Supreme Court of the United States by appeal, resulting in affirmance of the judgment below. 287 U. S., 251. Mr. Justice Sutherland reaffirming the well settled rule that a state has power to regulate not only the use of its high-

ways but private contracts also, insofar as they contemplate that use, and it may prescribe the terms upon which persons will be permitted to contract in respect of the use of the public highways for purposes of gain, said:—"It is well established law that the highways of the State are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which generally at least, the legislature may prohibit or condition as it sees fit."

1   And in this State the rule is settled by the opinion of Mr. Justice Pierson in West v. City of Waco, 116 Texas, 472, 294 S. W., 832. There the city had passed an ordinance making unlawful the parking of vehicles operated for hire, upon any of the public squares of the city. While the question of rates to be charged was not involved, the doctrine is reaffirmed that where the power is delegated to the city, it has the absolute control over its streets and public squares, and right to regulate and control the operation of vehicles carrying passengers or freight for hire, over the same, citing Green v. City of San Antonio, 178 S. W., 6; City of San Antonio v. Fetzer, 241 S. W., 1034, and Waid v. City of Fort Worth, 258 S. W., 1114, in all of which cases, the writ of error was refused.

Therefore, plaintiffs in error have no inherent or property right to use the public streets as they seek to do; they have acquired no contractual or vested right so to use the streets, and in the absence of such a right, the privilege is one which the State itself, or a city to which it has delegated the power, may grant or withhold as may be deemed proper and for the general good. This is the rule announced in the so-called "jitney" cases relating to the operation of jitneys upon city streets, in many of which, the regulations prescribed, though recognized by the courts as having the practical effect of prohibiting the use of streets to operators of jitneys, were nevertheless upheld. Gill v. City of Dallas, 209 S. W., 209; Davis v. City of Houston, 264 S. W., 626; Craddock v. City of San Antonio, 198 S. W., 634; Ex parte Luna, 98 Texas Crim. Rep., 458, 266 S. W., 415.

2   It is the universal practice to require operators of motor cars operating on public highways, to comply with regulations having in mind the public safety, public health and public morals; they are placed under strict police supervision, are required to comply with certain sanitary and traffic rules, to furnish bonds or insurance policies guaranteeing payment of

574

damages for injuries to person or property; certain qualifications are required of their drivers and the quality and kind of vehicles used may be prescribed; stringent regulations are made to control their congestion of traffic, and save the streets from being infested with an unnecessary number of vehicles for hire, also those operated by irresponsible persons. Dallas Taxicab Co. v. City of Dallas, 68 S. W. (2d) 359; Packard v. Banton, 264 U. S., 140, 44 Sup. Ct., 257, 68 L. Ed., 596.

Every regulation that has a tendency to increase the responsibility of persons using public streets exclusively for private gain in carrying on a private business, to that extent protects the public against traffic dangers and promotes the general welfare.

In fixing rates to be charged, the governing body must consider the cost of operation, of bonds and insurance policies, and all other like matters, below which, it would not be possible for an owner to furnish safe and responsible service in view of the necessary costs to produce that service.

In City of Seymour v. Texas. Elec. Service Co., 66 Fed. (2d) 814 (writ of certiorari denied, 290 U. S., 685), the city which owned an electric power distribution plant in competition with the Service Company, fixed a minimum rate to be charged by all concerns in that business.

It was provided in the ordinance fixing the rate that it was meant to be a minimum rate, "any utility being authorized to fix a maximum in accordance with their desires."

The Company immediately started a "rate war," reduced its charges below those of the city, frankly admitting that the rates it thus instituted were not rates on which either it or the city could earn a fair return on the capital invested, but were competitive cutthroat rates. It contended in substance, as is contended here, that the city was without power to pass minimum rate ordinances, below which it was unlawful to go; that the city had only the power to protect customers from immediate and direct overcharges; that the fourteenth amendment to the Constitution of the United States gave the utility the righ to handle its own property and fix its own competitive rates, even though they were insufficient to produce a fair return, provided they were below those fixed by the regulatory or governing body.

Judge Hutcheson rejected that view and said:—"Such a view of the situation is, however, too much foreshortened. The larger, the truer view, though the prime combatants seem at times to have lost sight of it, is that there is a cause at stake,

the cause of public service, the importance of which far transcends the failure of success in the lists of either champion. This cause it is the business and function of rate regulation to serve. Such regulation is intended to, it should, supplant wasteful competition," in sustaining the ordinance.

3 The right to fix a minimum as well as a maximum rate seems now, to be settled. 20 C. J., p. 329, Sec. 26D; 43 C. J., p. 425, Sec. 555; Tipton v. Tipton Light & Heating Co., 176 Iowa, 224, 157 N. W., 844; Iowa R. & Light Co. v. Jones Auto Co., 182 Iowa, 982, 164 N. W., 780; Pinney & B. Co. v. Los Angeles Gas & E. Corp., 168 Cal., 12, L. R. A., 1915C, 282, 141 Pac., 620, Ann. Cas., 1915D, 471; Economic Gas Co. v. Los Angeles, 168 Cal., 448, 143 Pac., 717, Ann. Cas., 1916A, 931; Kilbourn City v. Southern Wisconsin Power Co., 149 Wis., 168, 135 N. W., 499; Gainesville Gas & E. Power Co. v. Gainesville, 63 Fla., 425, 58 So., 785; Tampa v. Tampa Waterworks Co., 45 Fla., 600, 34 So., 631, 47 Fla., 338, 36 So., 174, affirmed in 199 U. S., 241, 50 L. Ed., 170, 26 Sup. Ct. Rep., 23.

In Community Natural Gas Co. v. Natural Gas and Fuel Co., 34 S. W. (2d) 901, Chief Justice McClendon said:—"the word 'regulate' can not be construed as limiting the power granted, to maximum rates."

In the case of State ex rel. Zone Cab Corporation v. Petrash, 125 O. St., 407, 181 N. E., 814, the Supreme Court of Ohio had before it for consideration a city ordinance which fixed both maximum and minimum taxicab charges. The relator was seeking a license without complying with the regulation relating to the minimum charge. In other words, it was his contention that the city had no authority to fix a minimum charge. The court said: "This question is not new, and it has been litigated in many cases in many cities, between taxicab companies and the city. We see no reason why the city may not define the maximum charge that may be made, and may also, if it sees fit to do so, when acting in good faith, fix the minimum charge that may be made by taxicab companies, and may also specify in the ordinance the distances or fractions thereof to which the charges mentioned apply."

In the case of Clem et al v. City of La Grange et al, 169 Ga., 51, 149 S. E., 638, 65 A. L. R., 1361, the Supreme Court of Georgia had occasion to pass upon the power of the City of La Grange to fix a minimum and a maximum charge to be made by taxicab companies and sustained the validity of the ordinance.

In City of St. Paul v. Clark, 259 N. W., 824, the Supreme

Court of Minnesota said:—"If that public interest may be reasonably served by fixing minimum rates, the ordinance before us may be sustained. Nebbia v. New York, 291 U. S., 502, 54 Sup. Ct., 505, 78 L. Ed., 940, 89 A. L. R., 1469."

The court, in Great Northern Utitlities Co. v. Public Ser. Comm., 52 Fed. (2d) 802, held valid a statute of Montana empowering a utility commission to fix minimum as well as maximum rates for gas companies, although such power could not be used in such a manner under such circumstances as to bring about a confiscation of the utilities' properties.

To like effect are Tipton v. Tipton Light & Heating Co., 176 Iowa, 224, 157 N. W., 844; Mapleton v. Iowa Pub. Ser. Co., 209 Ia., 400, 223 N. W., 476, 68 A. L. R., 993.

In Economical Gas Co. v. Los Angeles, 168 Cal., 448, 143 Pac., 717, Ann. Cas., 1916A, 931, the Supreme Court of California points out that "If the legislative body of a city might only fix a maximum rate, it might be possible for a corporation to reduce its charges in some form or another, to a point which would drive a competitor out of business and, after accomplishing that result, to resume the maximum charge permitted by law."

So here, if the powers of the Board of Commissioners with reference to fixing of rates for taxicabs were restricted to merely the fixing of maximum rates, the Board would have no adequate power to conserve the public interest against ruinous competition likely to result in the destruction of existing dependable transportation by irresponsible persons who by reason of the low rates charged hold out no hope of permanently replacing those whose business they destroy.

In considering cases dealing with the regulation of rates of public service utilities operating under franchises, it must be remembered that such utilities are operating under certain vested rights obtained through their franchises. While their rates are subject to regulation, they have obtained the right to carry on their business and occupy the City's streets for such purposes under a franchise right to do so, which can not be destroyed through means of fixing rates whether maximum or minimum, the effect of which is to confiscate their property by making it impossible to carry on their business with hope of a reasonable return. In other words, the power to regulate their rates may be qualified or limited by their vested right to conduct their business under their franchises. That, as the authorities cited above establish, is not true as to persons engaged in a business such as that of plaintiffs in error, who have

no vested rights in the use of the streets for their business and hence the privilege they seek is not protected from destruction. They stand upon an entirely different footing from the utility possessing rights under a franchise, consequently the result of a rate regulation upon their privilege to use the streets does not have the same legal effect as it would have were the vested rights of a public service utility involved.

The ordinance under consideration here, pertains only to intracity regulation and therefore City of Arlington v. Lillard, 116 Texas, 446, City of Fort Worth v. McCaslin, 116 Texas, 513, and City of Winters v. Murphey, 297 S. W., 479, dealing with intercity regulations, are not in point.

We have concluded that the ordinance is valid and therefore the judgments of the district court and Court of Civil Appeals, are affirmed.

Opinion adopted by Supreme Court July 10, 1935.