**CITY OF DALLAS et al. v. ROGERS.**

No. 14630.

Court of Civil Appeals of Texas. Dallas.

Dec. 26, 1952.

On Rehearing Feb. 20, 1953.

Dissenting Opinion Feb. 25, 1953.

Rehearing Denied March 27, 1953.

H. P. Kucera, City Atty., H. Louis Nichols and W. M. Parks, Asst. City Attys., Dallas, for appellants.

James L. Mitchell and W. R. Sessions, Dallas, for appellee.

CRAMER, Justice.

This is an appeal from an order granting a temporary injunction. Rogers, a produce dealer, filed suit against the City and the market master of the municipal produce market, seeking to restrain the City and its market master from refusing to rent him space for his truck and a stall for his use as a produce dealer. Rogers alleged that he was not guilty of violating any of the provisions of the City's ordinance No. 4801 applicable to said market and that the market master's refusal to permit him to rent and occupy a stall on the market, was arbitrary, wrongful, and an unreasonable discrimination against him, depriving him of an equal opportunity to engage in his business in competition with other members of the same group or class as himself, and depriving him of a license privilege grant-

118

ed by the City and its market master, which has not expired; alleged his damage at $100 per day for each day he was denied the right to rent and deal on the market by the City. Rogers also alleged that section 75-6, subdiv. D, of ordinance 4801, under which the City and its market master claimed the right to bar him, is invalid in that it is arbitrary, unreasonable, discriminatory, vague and uncertain; is a grant or delegation of power and authority not within the City's right under its charter and the laws of Texas; that the City has no authority or right to withhold from him the right to do business on the market under the valid provisions of ordinance 4801.

The City and its market master answered by motion to dismiss for the reason that Rogers' petition was insufficient, stated no cause of action, in that there is no allegation of fact to show the City and its market master were insolvent and unable to respond in damages; and Rogers failed to allege that he had a valid vested property right to operate his business on the market; and by general answer that Rogers was ejected from the market under the provisions of ordinance 4801 because, (1) he had, on July 20, 1952, illegally and unlawfully committed assault and battery upon an assistant market master; (2) had refused to pay the fee due under ordinance 4801 for a motor truck used by Rogers in handling produce on the market; (3) that Rogers made threats to the effect that he would whip and commit assault and battery upon the market master and his assistant; (4) that he used loud and boisterous language in an effort to threaten and frighten the market master; and that it was necessary by reason of the above that Rogers should be evicted from and barred from the market in order to protect the market and maintain it in the manner provided in ordinance 4801, and to prevent dealer from carrying out his threats.

A hearing on the application resulted in the trial court's overruling the City's motion to dismiss; the issuance of the temporary injunction as prayed for by Rogers; and by a further order requiring Rogers to maintain the public peace and abide by all rules and regulations for the operation of the market; and set temporary injunction

bond at $1,000. The City, after giving notice of appeal, moved the court to set an amount for a supersedeas bond, which the trial court refused.

This appeal has been duly perfected from the order, etc., and the cause is now properly before us for review.

The City briefs four points of error.

The first point asserts error in the overruling of its motion to dismiss, no facts being alleged by Rogers to show that he had no adequate remedy at law or vested property right which was being threatened or invaded by the City or its market master.

The market here involved was before this Court in its inception in Gillham v. City of Dallas, 207 S.W.2d 978, error ref. n. r. e., in which this Court upheld the right of the City to provide the market in question, and there called attention to the wide discretion of the City in the maintenance and operation of such market.

Ordinance 4801 authorizing the establishment, maintenance and operation, is general in scope; its caption showing it to be "An Ordinance Amending Chapter 75 of Title XXII of the 1941 Code of Civil and Criminal Ordinance of the City of Dallas as Amended by Providing Regulations for the Municipal Produce Market; Defining Terms; Prohibiting Marketing on Streets; Establishing the Area of the Municipal Produce Market; Creating Office of Supervisor of Weights, Measures and Markets; Providing for Duties of Supervisor of Weights, Measures and Markets; Fixing Rental Fees on Stalls; Limiting Use of Stalls to Producers and Produce Dealers; Prohibiting Spielers; Prohibiting the Throwing of Refuse on the Market; Prohibiting the Use of Market During Closed Hours; Prohibiting the Holding of Stalls by Trick, Scheme, or Artifice; Providing for Disposition of Unattended Produce; Fixing Minimum Quantities; Restrictions on Type of Produce; Restricting Use of Market to Producer and Produce Dealers; Prohibiting Loitering; Making It Unlawful to Bring Beer or Alcoholic Beverages onto Municipal Market; Collusion among Dealers to Fix Prices Prohibited; Animals on Market Prohibited; Cull Produce Prohib-

ited; Signs Required; Parking Prohibited in Certain Areas; Speed Limit Fixed at Twelve (12) Miles per Hour; Parking Limited; Broken or Sliced Melons Prohibited; Blocking Sidewalks Prohibited; Providing a Penalty; Providing for Severability; Repealing Clause; and Declaring an Emergency."

Article 75–4 creating the position of supervisor of weights, measures and markets in the Department of Public Works also creates assistants under him to be designated as "market master," and "assistant market masters." It provides that " * * * where any duty is placed on the supervisor under this chapter relating to the 'municipal produce market' the same may be performed by any market master or assistant market master. * * *." Those named are given and granted powers of police officers and are authorized to make arrests with or without warrant where a regular police officer would be authorized to do so. It provides, "Any person violating any lawful order" of said officers "shall be guilty of a misdemeanor and subject to the penalties provided for in this chapter." It provides for a $1,000 surety bond by each of said officers for "the faithful performance of the duties of their respective offices, * * *." The duties of such officers are set out in Art. 75–5, which gives them " * * * general supervision and control over the 'Municipal Produce Market' and the conduct of business therein, and to enforce all of the terms and provisions of this Chapter, and the rules and regulations promulgated hereunder. Second: To assign stalls to the producers and dealers attending the 'Municipal Produce Market,' and collect the rental fees for the use thereof, and pay the same to the City Auditor. Third: To regulate traffic and enforce order in and about the 'Municipal Produce Market.' Fourth: To order or remove from the market in a summary manner any person who is guilty of violent or disorderly conduct, or who shall in any way interfere with him in the performance of his duties, or who shall disturb the producers, dealers, buyers, or any other person lawfully using said market. Fifth: To prescribe rules and regulations governing the conduct of business in the 'Municipal Produce Market' not inconsistent with the provisions of this chapter. * * * Seventh: To designate the various stalls in the market which shall be used by producers, to designate the various stalls which shall be used by produce dealers, and to designate the areas and parking spaces to be used by customers and buyers."

Art. 75–6 provides in section (B) for application to the named officers and for payment of a fee for the rental of stalls to dealers, and a different fee for automobiles. Section (C) provides that the fee "* * * shall entitle the producer or produce dealer to the use of said stall between the opening and closing hours of the Municipal Produce Market, of the day for which the fee is paid, or until the load which he had on his vehicle at the time he rented said stall has been sold; provided, however, that in no event shall said producer or produce dealer be entitled to use said stall longer than the day for which the fee was paid without the payment of an additional fee for each day. No produce or merchandise may be placed in a stall in addition to that upon which a fee was originally paid, without the payment of an additional fee. The term 'day' as used herein shall mean the period of time from 12:00 Noon of any calendar day to 12:00 Noon of the following calendar day, or any portion thereof."

Section (D) is as follows: "The supervisor of weights, measures and markets shall have the right to refuse to rent a stall to any producer or dealer who has been guilty of willful violation of the provisions of this chapter, or of any of the rules or regulations promulgated thereunder. Said supervisor shall have the authority to eject any producer or dealer or any other person who willfully refuses to conform to the provisions of this chapter, or the rules and regulations promulgated thereunder, or any other ordinance of the City of Dallas, or any law of the State of Texas, without refunding to said producer or dealer the rental paid for said stalls. No person shall sell on the Municipal Produce Market any of the produce of a producer or dealer, or act as the agent or employee of a dealer who has been barred from the Municipal Produce Market by the Supervisor of Weights,

Measures and Markets. No produce dealer shall hire as agent or employee any person who has been barred from the Municipal Produce Market for violations of any ordinance or regulation promulgated by the Supervisor of Weights, Measures and Markets under the authority herein granted."

Art. 75–8 provides: "* * * It shall be unlawful for any person to make an outcry or do any hawking or spieling, or to use loud, boisterous, or profane language, or give a musical or other entertainment for the purpose of drawing customers or attracting attention in said Municipal Produce Market."

Art. 75–17 provides: "It shall be unlawful for any person to bring any beer or alcoholic beverage upon the Municipal Produce Market, or to consume any such beer or alcoholic beverage on the Municipal Produce Market, or to be under the influence of such beer or alcoholic beverage or any narcotic drug while on the Municipal Produce Market."

Art. 75–25 provides: "Any person violating any of the provisions of this chapter, or any of the rules and regulations promulgated hereunder, shall be deemed guilty of a misdemeanor, and upon conviction shall be subject to a fine of not more than Two Hundred and No/100 ($200.00) Dollars."

The motion considered in connection with the record above shows a barring of Rogers from the city market *in the future*, under pleadings which raise a question of fact as to whether Rogers has an adequate remedy at law, and in our opinion also a question of fact as to whether the market master did or did not abuse his discretion in barring Rogers from the market in the future. The market in question was a public market, conducted not for profit, but for the public good, with public funds obtained by the issuance of bonds.

A public market is, "A market which is not only open to the resort of the general public as purchasers, but also available to all who wish to offer their wares for sale, stalls, stands, or places being allotted to those who apply, to the limits of the capacity of the market, on payment of fixed rents or fees." "Public" means "The whole body politic, or the aggregate of the citizens of a state, district, or municipality." Black's Law Dictionary, 3rd Ed.

Art. 1015, subd. 31, Vernon's Ann.Civ. St., authorizes the city not only to establish markets, but to "* * *" control and regulate market places and privileges; * * *."

Under said ordinance the City in the conduct of its market had the authority to make all reasonable regulations necessary for the conduct of business on the market. Bruce v. City of Gainesville, Tex.Civ.App., 183 S.W. 41; Gillham v. City of Dallas, supra. Rogers, under the ordinance, had an equal right to do business on the market with all other members of the public under the reasonable and valid regulations thereof by the City in its conduct of the market for the purpose for which it was created.

The statement of facts shows Rogers testified he had been a produce dealer on the market since 1923; operated trucks and sells off the trucks there and on market stalls. On July 20, 1952 he paid all fees on the stalls he was using on that date; knew the regulations of the market with reference to fees; that on the occasion in question he had no vehicle or produce or stall on the market for which he had not paid a fee and received a receipt. The dispute which occasioned the fight, made the basis of barring Rogers from the market, arose over the payment of a fee for a truck standing near one of Rogers' stalls, and started when Rogers was waiting on a customer.

It is undisputed that in the fight, Rogers struck the assistant market master, and was arrested on the market master's complaint to the City police.

The evidence of Rogers as a whole with reference to the fight, in our opinion, made a question of fact for the purpose of the hearing on the temporary injunction as to who was to blame for the fight.

Under such record a civil, not a property right, was involved and the trial court did

not err in holding that Rogers had no adequate remedy at law and in overruling the motion to dismiss. Point 1 is overruled.

Points 2, 3, and 4 assert error in the granting of the injunction because the evidence was undisputed that Rogers was guilty of violating ordinances regulating the operation of the market, asserting that the regulation of the market is solely within the discretion of the City and there is no evidence that the market master was not acting in good faith or was motivated by private reasons in his acts, and in the trial court's holding that the City could not refuse to rent a stall in the municipal produce market to Rogers who had been guilty of assaulting the assistant market master who was in the performance of his duties at the time, and where Rogers had been guilty of conduct detrimental to the safe and proper operation of the market. As heretofore stated, this is an appeal from a temporary injunction, and the court's discretion in the granting thereof can only be reversed for an abuse of such discretion. Bates v. Texas Electric Ry. Co., Tex.Civ.App., 220 S.W.2d 707, by this Court; City of Dallas v. City Packing Co., Tex.Civ.App., 86 S.W.2d 60; Burke v. Shafer, Tex.Civ.App., 219 S.W.2d 590; Haden Employees' Ass'n v. Lovett, Tex. Civ.App., 122 S.W.2d 230, syls. 4, 5. This Court does not determine the ultimate facts, and the judgment here has no influence or weight whatsoever on the trial on the merits. It destroys no ultimate right, and if wrongfully issued, the party damaged is entitled to recover such damages against the party to whom the relief was granted. It merely preserves the status quo until a final hearing. The evidence of Rogers and his witnesses raised an issue as to whether he had, or had not, been guilty of the acts testified to by the City's witnesses, sufficient to sustain the trial court's judgment here appealed from.

Under such record we cannot hold, as a matter of law, that the trial court abused his discretion to such an extent as to justify a reversal of his order granting the temporary injunction.

If either party is refused an early trial on the merits, he has his remedy under Art. 1824, V.A.C.S. Points 2, 3 and 4 are overruled.

Finding no reversible error in the judgment below, it is

Affirmed.

## On Rehearing.

DIXON, Chief Justice.

In my opinion the appellant's motion for rehearing should be granted, the judgment of the trial court reversed, and judgment rendered denying appellee a temporary injunction.

The Municipal Produce Market, owned and operated by the City of Dallas, is public property. No one has a vested right to occupy its premises or to use its facilities for his own private business for profit. Persons allowed to do so must exercise the permission granted to them subject to all reasonable rules and regulations imposed by the governing authority; 35 Am. Jur. 140, and cases there cited.

In the case at bar the regulations make it the duty of the market master "to order or remove from the Market in a summary manner any person who is guilty of violent or disorderly conduct, * * *;" Art. 75–5, Ordinance 4801; and the market master "shall have the right to refuse to rent a stall to any producer or dealer who has been guilty of wilful violations of the provisions of this Chapter, or of any of the rules or regulations promulgated thereunder." Art. 75–6, Ordinance 4801. Violation of the ordinance is punishable by a fine of not more than $200. Art. 75–27, Ordinance 4801.

Ordinances similar to the one in question have been upheld in other jurisdictions. In the case of Hutchins v. Town of Durham, 118 N.C. 457, 24 S.E. 723, 727, 32 L.R.A. 706, it is said: "One who occupies a stall under a license granted in pursuance of the provisions of an ordinance defining the rights and duties of the town (such as that under which plaintiff entered) is not a lessee, but a mere licensee. He ac-

**122**

quires no right in the soil, but is an occupant at the absolute pleasure and discretion of the licensor." See also City Council of Charleston v. Goldsmith, 2 Speers, S.C., 428, where appellee, as in the case here, was expelled from a public market for becoming involved in a fight.

■ Here the appellee had been occupying a stall on a day to day basis. Viewed in the most favorable light, he could be only a tenant at will. Under similar circumstances our Supreme Court has held that it was improper to grant a temporary injunction restraining city authorities from excluding such a tenant from further occupancy of a public market. Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307.

■ It is a well-established rule that unless vested property rights are involved, equity will not intervene to restrain public officials in their administrative efforts to enforce regulatory city ordinances which carry a penal provision. I quote from the case of State ex rel. Flowers v. Woodruff, 150 Tex.Cr.R. 255, 200 S.W.2d 178, 181, the Court there quoting from 28 Am.Jur. 414: " * * * equity concerns itself only with property rights, and will not intervene for the purpose of restraining the enforcement of a criminal statute *or of a regulatory ordinance* providing a penalty for its violation, *even though it is being enforced in an oppressive and unlawful way*." (Emphasis mine.) The Supreme Court of Texas has held to similar effect in Ex parte Sterling, 122 Tex. 108, 53 S.W. 2d 294. Both of the above cases hold that the trial courts had improperly granted temporary injunctions. See also Prater v. Storey, Tex.Civ.App., 249 S.W. 871.

■ Regardless of whether appellee Rogers, or the assistant market master McKinnon, was more to blame for the fight, the fact situation here, in my opinion, did not warrant the issuance of the injunction. It is only when the ordinance or regulation itself is invalid (and not always then), or when the conduct of the enforcing officials is arbitrary and capricious, or they are acting in bad faith, that injunctive power will be exercised to stay the efforts of public officials in administering regulatory ordinances which carry penal provisions. Parsons v. City of Galveston, 125 Tex. 568, 84 S.W.2d 996; Gurtov v. Williams, Tex. Civ.App., 105 S.W.2d 328. There is no testimony in this record that Curtis, the market master, acted arbitrarily or in bad faith in refusing to re-rent space to Rogers. The ordinance authorized such action by the market master. Consequently I think it was improper to restrain him in such a way that Rogers may continue to occupy space notwithstanding the market master's refusal to continue renting a stall to him. But for the injunction, the market master could eithter eject appellee or prefer criminal charges against him for wrongfully occupying a stall contrary to the provisions of a penal ordinance. As it is, the market master cannot do either.

In the case before us the city authorities refused to re-rent space to the appellee, among other grounds because he had become involved in a fight with the assistant market master, McKinnon. The fight took place in connection with performance by McKinnon of his duty to check stalls and vehicles to see that the proper fees had been paid. As may be expected, the two participants give different versions of the fight. If the assistant market master's testimony is true, the fight was an unjustified assault by appellee. But for the purposes of this opinion we shall consider only appellee's own testimony. Here it is:

"Q. Did you hit Mr. McKinnon in the face and break his glasses, down there on the market Sunday? A. I reached up with one hand and as the man jerked me by the arm, jerked me around, I reached up and got his glasses with one hand and hit him.

"Q. You sure did hit him? A.

"Q. And you broke his glasses? A. The glasses were broke, I broke them with this hand, jerking them off.

"Q. And you hit him again, didn't you? A. Yes. * * *

"Q. When you hit Mr. McKinnon he was on the public market, wasn't he, at

the time? A. Yes, he was on the market.

"Q. And he was there as assistant market master, wasn't he? A. Yes.

"Q. And at the time you were there as a person in one of the stalls, after buying it under a fee? A. I was there.

"Q. Yes, sir. A. I was selling the peaches.

"Q. Why did you hit Mr. McKinnon? A. Because he jerked me around by the arm and told me to—that the rent had not been paid on that, and I have got the tickets here. I will show them to you. * * *

"Q. And because he said that it had not been paid, you hit him? A. He reached out and jerked me around, and that's the reason I hit him.

"Q. That's the reason you hit him? A. That is right. * * *

"Q. Didn't you tell Mr. McKinnon that you would pay for his glasses? A. Yes, but I changed my mind.

"Q. You haven't paid for them, have you? A. I haven't paid for them. * * *

"Q. When you hit Mr. McKinnon, what happened? A. After I hit him, he fell down.

"Q. And then what happened? A. Well, he got back up and I hit him again.

"Q. And then what happened? A. That's all that happened.

"Q. Now you hit him the first time because he was pulling on your arm? A. Yes.

"Q. What did you hit him the second time for? A. Because I wanted to win it. I didn't want to lose any fights.

"Q. You hit Mr. McKinnon when he came around to inquire about the fees on those stalls? A. I was selling some stuff and he jerked my arm and jerked me around and said, 'This stall hasn't been paid on.' Well, it had been paid on. I said, 'I have the tickets; I will show you.

"Q. All right, what else happened right after that? A. What happened after

that? I reached up and got his glasses and hit him.

"Q. All right. Now after you hit Mr. McKinnon the second time—A. Yes, sir.

"Q. —What happened? A. What happened? He walked on off."

■ Even if we accept appellee's version that McKinnon grabbed him by the arm (which McKinnon denies), and if we say that McKinnon was wrong in so doing, appellee's act in striking McKinnon a second time "because he wanted to win it," was far beyond what was necessary for self-defense under the circumstances, as depicted by appellee himself, and was an act of aggressiveness beyond what was called for under the circumstances. To say the least, appellee did not come into court with clean hands.

■ In short, as I see it, if we allow the temporary injunction to stand, appellee has successfully invoked the aid of equity, though he has no vested property right involved, though he has not come into court with clean hands, and though he is, in effect, restraining a public official from filing criminal charges against him for wrongfully occupying a stall contrary to the terms of a penal ordinance.

Appellant's motion for rehearing is granted; the judgment of the trial court granting temporary injunction is reversed and judgment is here rendered denying a temporary injunction to appellee.

YOUNG, J., concurs.

CRAMER, Justice (dissenting).

I find myself unable to agree with my associates in setting aside our former order herein and granting appellants' motion for rehearing. The evidence, as I see the record, raised an issue of fact for the trial court. The market in question, under the holding in Gillham v. City of Dallas, Tex. Civ.App., 207 S.W.2d 978, is a public market. The rule applicable to the question here is stated in 5 C.J.S., Appeal and Error, § 1591, page 485, as follows:

"Generally, in the absence of manifest abuse of discretion, an appellate court will not review, modify or re-

vise discretionary rulings as to the grant, dissolution, continuance, or modification of an injunction or restraining order. Particularly is this true where the facts are in dispute, opposing inferences may reasonably be drawn from them, and no irreparable injury impends. Such discretion is, however, a legal or judicial one which is subject to review for abuse or improper exercise, as where there has been a violation of some established rule of law or principle of equity, or a clear misapprehension of the facts; and, where an abuse of discretion is clearly made to appear, the appellate court will reverse the order or decree."

The above is the rule in Texas as shown by the numerous cases cited in the footnote to the C.J.S. citation above.

The following evidence of Rogers on the hearing I deem material to the question here, to wit:

"Q. Why did you hit Mr. McKinnon? A. Because he jerked me around by the arm and told me to—that the rent had not been paid on that, and I have got the tickets here. I will show them to you.

"Q. The rent hadn't been paid on what? A. On the stall.

"Q. Didn't he ask you if the rent had been paid on that truck? A. He said the rent had not been paid.

"Q. And it had not been paid, had it? A. It had been paid. * * *

"Q. And you told him you weren't going to pay any fee on the truck, didn't you? A. I am not going to pay two fees on it. I paid one, just like I have got it here in my pocket to show that one was paid.

"Q. Let's see it, those receipts.

"The Court: Are we talking about a particular day, now?

"Mr. Nichols: Yes, July 20th, last Sunday.

"The Court: All right.

"Mr. Nichols: Will you mark these, please. (The instruments referred to were marked Defendant's Exhibits 1, 2, and 3, but not introduced in evidence.)

"Q. (By Mr. Nichols) Are these all of the receipts that you received on July 20th? A. I just received the three receipts.

"Q. Defendant's Exhibits 1, 2 and 3 are the receipts that you received from Mr. Jones for the three stalls? A. That's right."

It appears in the evidence later, although the receipts do not appear to have been introduced, that two of such receipts were in the name of Rogers himself, and that the third was in the name of his son. He also testified that the assistant market master told him the reason he was barred from the market was because "this trouble come up." The question of fact as to whether or not the agent of the City was acting in a reasonable manner under all the evidence in the record here, or was arbitrary in his conduct in his taking hold of appellee while he was waiting on a customer, provoking the fight, was for the trier of the facts and in my opinion his finding thereon, not from a preponderance of the evidence, but for the purpose of determining whether the parties should remain in status quo toward each other until a full trial on the merits could be had and the rights of the parties finally determined, is binding on this Court unless it was clearly wrong.

Appellant asserts no property right is involved. Injunctions may also be granted to protect a civil right. 24 T.J. p. 30, sec. 16, and p. 46, sec. 29; 35 R.C.L. pp. 136, 139, Markets and Marketing, secs. 4 and 8. Appellee alleged and testified that he suffered monetary loss every day he was barred from the market.

I cannot therefore join with the majority in holding that the trial court abused his discretion in granting the temporary injunction merely holding the matters in status quo until a jury, or a judge, if not tried before a jury, on a final hearing on all the issues on the merits, has settled the facts finally. I therefore respectfully register my dissent.