IN RE YELLOW CAB & BAGGAGE COMPANY.

FILED FEBRUARY 16, 1934. No. 28470.

*Francis P. Matthews, John P. Breen* and *W. P. Kelley,* for Publix Cars, appellant.

*Kennedy, Holland & De Lacy* and *Ralph Svoboda,* for Omaha & C. B. Street R. Co., appellee.

*Paul F. Good, Attorney General,* and *Edwin Vail,* for Nebraska State Railway Commission.

*Hugh H. Drake, amicus curiæ.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

GOOD, J.

This is an appeal from the action of the state railway commission in promulgating certain rules and regulations governing the operation of taxicabs in the city of Omaha. The Yellow Cab & Baggage Company and six other taxicab companies joined in filing an application before the commission, requesting it to enter an order establishing rules and regulations. Omaha & Council Bluffs Street Railway Company intervened and asked for the same relief. Publix Cars, a corporation operating in Omaha a taxicab business on a substantially different basis from the other taxicab companies, appeared before the commission and filed objections to the application. The commission set a time for hearing, and Publix Cars requested an extension of time, so that it might present its side of the matter. After hearing a part of the evidence, the

commission adjourned the hearing for five days, and thereupon Publix Cars introduced its evidence. After hearing and argument, the commission entered an order which will be more particularly referred to later in this opinion. From that order, Publix Cars appealed. All of the other taxicab companies and intervener filed a cross-appeal.

Publix Cars, hereinafter referred to as appellant, complains of the action of the railway commission in not granting it a continuance for a greater length of time in order to present its contentions. It does not appear that appellant desired to call any other witnesses than those who were called, or that it did not have all the facts in evidence before the commission that might have been produced. The question of continuing a hearing before the commission is one within its discretion, and its action in granting or refusing a continuance will not be interfered with unless an abuse of such discretion is shown. The record shows no abuse of discretion.

Appellant contends that the railway commission is without any power to regulate the business of taxicab companies within the city of Omaha, and that the city of Omaha, under its charter provisions, has power to establish all rules and regulations for the conduct and operation of taxicab business within its borders.

In 1906 the people of Nebraska adopted an amendment to the Constitution, providing for the creation of a state railway commission, and which now appears as section 20, art. IV of the Constitution. That section, among other things, provides: "The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision." After the adoption of this amendment, the legislature in 1907 adopted a comprehensive act, defining the powers and duties of the railway commission, and providing generally the au-

thority that the commission might exercise over common carriers. Section 4 of that act, being section 75-401, Comp. St. 1929, defines the term "common carriers" to include "all corporations, companies, individuals and association of individuals, * * * that may now or hereafter own, operate, manage or control any railroad, interurban or street railway line * * * express company, * * * and any other carrier engaged in the transmission of messages or transportation of passengers or freight for hire." This statute brings taxicab companies within the term "common carriers," and that they are such common carriers is recognized by this court in *Peterson v. Beal*, 121 Neb. 348. See, also, *Terminal Taxicab Co. v. Kutz*, 241 U. S. 252, 60 L. Ed. 984; *Anderson v. Yellow Cab Co.*, 179 Wis. 300; *City Cab Corporation v. Patrick*, P. U. R. 1932C, 1. It thus appears that the commission, both by Constitution and statute, is given power to regulate and control the operation of common carriers.

Relative to the powers conferred upon the state railway commission by the constitutional provision above quoted, it was held in the case of *In re Lincoln Traction Co.*, 103 Neb. 229: "Unless there has been specific legislation that might limit or affect this power given to the commission, it would seem that the people have given this commission all the control over common carriers that they themselves could exercise." And such we deem to be the rule. The question then arises: Is there any specific legislation that limits or affects the power of the commission to act in the premises? Appellant contends that the provisions of the Omaha charter are specific legislation which confers this power upon the city council of Omaha and thus deprives the commission of the power to enact the rules and regulations. The distinction between specific and general legislation is drawn in *State v. Clarke*, 98 Neb. 566.

To support its contention that the city of Omaha, and not the state railway commission, is vested with authority to promulgate rules and regulations governing the operation of taxicabs within the city, appellant cites and relies

upon subdivisions 17, 18, and 25 of section 14-102, sections 14-109 and 14-110, Comp. St. 1929. These sections are all parts of the statutory charter of cities of the metropolitan class, in which the city of Omaha belongs.

Subdivision 17 of said section 14-102 authorizes the council "To regulate the transportation of articles through the streets, and to prevent injuries to the streets from overloaded vehicles, and regulate the width of wagon tires, and tires of other vehicles." Clearly, this has no application to the question under consideration. Subdivision 18 of said section provides: "To prevent or regulate the rolling of hoops, playing of ball, flying of kites, the riding of bicycles or tricycles, or any other amusement or practice having a tendency to annoy persons passing in the streets or on the sidewalks, or to frighten teams or horses. To regulate the use of vehicles propelled by steam, gas, electricity, or other motive power, operated on the streets of the city." Evidently this relates to the police power to control the manner of the use of the streets. The city council no doubt is vested with power to regulate the rate of speed, parking privileges, the manner of turning to the right or left, and other regulations of that character. Primarily, the provision is to regulate the use of the streets for the protection and safety of the public, and not to the general control of taxicab companies or other common carriers. Subdivision 25 of said section confers on the city council the power to make and enforce all police regulation for the good government, general welfare, health, safety and security of the city and its citizens. This provision in no manner gives to the city general control and regulation of common carriers.

Section 14-109 authorizes the imposition of occupation and license taxes and for registration of vehicles. Section 14-110 merely provides that where any power is conferred upon the city, and the manner of its exercise is not especially pointed out, the council may exercise that power by ordinance.

Appellant also cites and relies upon sections 60-101, 60-

102, and 60-326, Comp. St. 1929. These are sections of the motor vehicle chapter. Section 60-101 defines "motor transportation company" for the purpose of that act and provides that the term shall not include persons, companies or associations, operating motor vehicles exclusively for the transportation of persons and baggage, and which are operated exclusively within the limits of a municipal corporation. Section 60-102 provides: "The Nebraska state railway commission shall have general control of the common carriers mentioned in section 1 hereof (60-101) and is hereby vested with authority to make reasonable regulations, except the fixing of rates or fares to be charged, governing each motor transportation company in this state; is vested with authority to regulate the service and safety of operation of each such motor transportation company in this state; to require said common carriers to file annual and other reports, containing such information and data as the commission may require, and to provide uniform accounting systems." We fail to find in these sections that any power is given to the city to regulate the general control of taxicabs. Section 60-326 provides: "Nothing contained in the provisions of this article shall be construed to limit the power of local authorities to make, enforce and maintain any ordinances, rules or regulations, in addition to the provisions affecting motor vehicles." This is a negative provision only, and does not purport, in itself, to confer any power upon the city to exercise general control over the operation of taxicabs or other common carriers.

Appellant also cites section 74-1101, Comp. St. 1929. This is a section of the article dealing with street railways. After defining the term "street railway" and authorizing extension of the street railway service by motor busses, the section concludes with this language: "Nothing in this act shall be construed to deprive any city of this state of the right and power to grant licenses issued by the proper city authorities to other auto or motor busses, taxicabs or vehicles, to use the streets of

the city in carrying passengers for hire, and to regulate such carriers as to rates, fares and service." This, again, is a negative provision limiting the scope of the article on street railways and does not, in terms, confer any powers upon cities to control and regulate the operation of taxicabs or other common carriers.

We are unable to accept appellant's view that the statutory provisions above referred to answer to the call of "specific legislation," mentioned in section 20, art. IV of the Constitution. All of the provisions referred to are general in their nature and not specific legislation, within the meaning of the constitutional provision. None of these provisions is availing to take from the railway commission the power to regulate and control the operation of common carriers.

Appellant cites and relies upon the opinion of this court in *Omaha & C. B. Street R. Co. v. City of Omaha,* 114 Neb. 483. It may be conceded that there are some expressions in the opinion which apparently lend support to appellant's contention. It must always be borne in mind that what is said in the opinion must be construed in the light of the question before the court for determination. That was an action to enjoin the enforcement of a city ordinance. Many grounds for the invalidity of the ordinance were urged, among them that it granted a franchise without having complied with the statutory and charter provisions relative to the granting of franchises. A general demurrer to the petition was filed and was overruled by the trial court. The following appears in the judgment of the court in that case: "The court upon due consideration finds and concludes that any permit or license issued or attempted to be issued by the defendant city or its officers under the provisions of the ordinance No. 12696, attached to plaintiff's petition as exhibit 1, would be a granting of a franchise to the licensee within the meaning of the city charter of the city of Omaha section 3719, Statutes of 1922, and hence the court overrules the defendant's demurrer to the plain-

tiff's petition." Defendant elected to stand upon its demurrer and refused to further plead. The injunction was thereupon granted by the trial court. The decision of the trial court was based exclusively upon the proposition that the ordinance granted a franchise without having complied with statutory and charter provisions relative to the granting of franchises. The only question for determination by this court upon appeal was whether the court erred in that holding. The only question properly before the court for decision was whether the ordinance granted a franchise, and any holding that the ordinance was valid should be construed to mean only that it was not vulnerable to the charge that it granted a franchise.

We have no doubt that, under the charter provisions, the city of Omaha is vested with police power to regulate the use of its streets by taxicabs or other vehicles; that it may require an occupation or license tax from those operating such; that it may, in some respects, regulate manner of operation of vehicles on the streets; but this does not amount to giving to the city the general control and regulation of the operation of taxicabs or other common carriers.

The city is authorized to legislate as to matters which are strictly local or municipal, while the railway commission enacts rules and regulations which are matters of general public or state concern. It is difficult to draw a line marking the distinction between those matters which are of local or municipal concern and those which are of a general nature. The court must consider each case from the facts and circumstances peculiar to it and draw the line of demarcation in that particular case. *Omaha & C. B. Street R. Co. v. City of Omaha*, 125 Neb. 825; *Carlberg v. Metcalfe*, 120 Neb. 481.

It must be borne in mind that any power given to a city must be strictly construed. If the grant of power is in doubt, the power will be held not to exist. Of course, the city has the implied powers which are necessary to the exercise of those specially granted. A differ-

ent rule obtains with reference to the railway commission. It derives its power generally from the Constitution and, as above stated, has plenary power with reference to the control and regulation of common carriers, in the absence of specific legislation. The powers of the railway commission, therefore, are to be liberally construed, while those of the city are to be strictly construed. The plenary power of the railway commission may only be curtailed or diminished where the legislature has, by specific legislation, occupied the field. No provision by the legislature has been pointed out, nor are we aware of any, which occupies the field with reference to the control and regulation of taxicabs, and, therefore, we conclude that such power is vested in the railway commission.

Appellant complains that certain of the regulations, contained in the commission's order, are unreasonable, arbitrary and confiscatory of its property and property rights. It complains of the regulation which requires taxicab companies to make application for and obtain certificates of convenience and necessity before they may operate within the city. The regulation does provide that such certificates will be issued as a matter of course, upon application, to all taxicab companies for the number of cabs they were operating at the time the regulation was adopted. In other words, such certificate, as to existing taxicabs in service, was a mere formality, but such certificates are required by the regulation before any extension may be made to any taxicab system. Such certificates have been required in many of the states with reference to the establishment and the extension of public utilities. The object in requiring such certificates is not only to protect those already occupying the field in their investment, but to protect the public as well. Unreasonable and unwarranted competition might be carried to the extent that it would not only injure and jeopardize the property of those operating the utilities, but might even result in destroying them. Such a result might be disastrous to the interests of the public.

In the instant case, it appears that street railways are necessary for mass transportation. If an unnecessary and unreasonable number of taxicabs are authorized to operate in the city and along the lines of the street railway, it may result in destroying the street railways to the great detriment of the public interest. It has now come to be recognized that unwarranted competition, especially in the line of public utilities, may be and frequently is harmful to the public interest, as well as to those engaged in such competition. Certificates of convenience and necessity for the addition and extension of service in public utilities are, therefore, to be considered a proper regulation.

Appellant complains particularly of regulations Nos. 3 and 4. Regulation No. 4 requires all taxicabs to be equipped with a practicable standard fare-registering device, or instrument, commonly known as a taximeter, that will measure the distance traveled by the vehicle, to which it is attached, and record, by figures or design, the fare determined or charged in dollars or cents, pursuant to such measure of distance or record of time. Regulation No. 3 provides that all fares shall be computed and determined on a mileage basis, plus waiting time, and recorded on a taximeter, and that no operator shall charge, or attempt to charge, any passenger a greater rate of fare than that to which the taxicab is entitled. It is a matter of common knowledge that taxicabs generally are equipped with taximeters, and that they are necessary to prevent persons or passengers using these taxicabs from being overcharged; that they may know exactly the charge for which they are liable, and not left to the mercy of any driver or operator of such vehicle. We think the regulations are reasonable, are not arbitrary, and are not confiscatory. In fact, most reputable taxicab companies have voluntarily, without requirement, installed taximeters in their cabs as a protection to the public and to the owners.

The Yellow Cab & Baggage Company and the other tax-

icab companies that joined with it in the application to the railway commission, together with the intervener, have filed a cross-appeal, because of the refusal or failure of the commission to fix a minimum fare for taxicabs. It is said that the commission refused or failed so to do because of section 75-1001, Comp. St. 1929, which provides: "No public body in this state authorized to fix rates for the service of any public utility shall establish other than maximum rates, and any minimum rate established by said body shall be deemed null and void." Upon the one hand, it is contended that said section is specific legislation and prevents the railway commission from adopting any order or regulation fixing minimum fares. On the other hand, it is contended that the statute is not specific legislation, within the meaning of the constitutional amendment, and in no way affects the power of the commission to adopt a rule or regulation providing for minimum fares.

It is unnecessary to pass upon the validity of the statute or its effect. If, without the statute, the commission did not deem it proper or wise to enact a rule fixing a minimum fare, that was a matter for it to determine. It would be, in effect, a legislative act of the commission, and failure to adopt a legislative act is not a subject for review by the court. We find no merit in the cross-appeal.

It follows that the order of the railway commission, in so far as involved in this appeal and passed upon in the opinion, is right and is

AFFIRMED.

PAINE, J., dissents.

EBERLY, J., concurring separately.

I concur in the result and the statement of the law as set forth in the syllabus, but do not agree with the views expressed by the learned author of the opinion on the subject of the powers of metropolitan cities as defined and conferred by charter, and which, in the absence of affirmative action on any particular subject involved by

the state railway commission, might be lawfully exercised by such city.

I am in harmony with the view that these grants of power to the municipality are general in their nature, may not be deemed "specific legislation" in the constitutional sense of that term, and must be now regarded as expressly subject and subordinate to rules and regulations of the state railway commission lawfully adopted within the scope of its constitutional powers.