## REED v. CITY OF WACO.
### No. 2875.

Court of Civil Appeals of Texas.  Waco.
July 27, 1949.

Rehearing Denied Sept. 22, 1949.

Sleeper, Boynton, Darden & Burleson, Waco, Peeler Williams, Jr., Waco, for appellant.

D. M. Wilson, City Attorney, Waco, Naman, Howell & Boswell, Waco, for appellee.

TIREY, Justice.

This is a suit (non-jury) for a declaratory judgment. Wallace Reed, a taxicab operator, brought the action against the City of Waco, a home-rule city, and alleged in effect that a certain ordinance of the City of Waco regulating taxicabs was invalid as a whole and as to each section thereof in that it contravened the terms of both the State and Federal Constitutions and he sought a judgment to that effect. He also sought a judgment declaring unconstitutional Article 6698, Vernon's Ann. Civ.St. Appellant sought to have the court. issue its writ of injunction to restrain the enforcement of the ordinance. The trial court held against each of appellant's contentions and entered judgment favorable to the City. Plaintiff has perfected his. appeal.

Appellant's first point is: "The ordinance * * * in all its sections, or in each section, violates the 14th Amendment to the Constitution of the United States,. and Article 1, Section 3 and Section 19 of the Constitution of Texas [Vernon's Ann. St.] * * *."

Appellant's cause of action is grounded upon the invalidity of Article 6698, supra, and the ordinance of the City of Waco. based thereon.

Said Article provides: "Municipal Regulation. The certificate of registration and numbering for purposes of identification, and the fees herein provided for shall be in lieu of all other similar registrations heretofore required by any county, municipality or other political subdivision of this state, and no such registration fees or other like burdens shall be required of any owner of any motor vehicle or motorcycle by any county, municipality or other subdivision of the state. This provision shall not affect the right of incorporated cities and towns to license and regulate the use of motor vehicles for hire in such corporation. Nothing herein shall in anywise authorize or empower any county or incorporated city or town in this state to levy and collect any occupation tax or license fee on motorcycles, motor vehicles or motor trucks; provided, that such cities or towns are hereby authorized and empowered to levy and collect a city permit fee, not to exceed two (2%) per cent of the gross receipts per annum, for the operation of each motor vehicle transporting passengers for hire or a street rental charge based upon gross receipts, not to exceed two (2%) per cent per annum, for the operation of motor vehicles transporting passengers for hire, other than motor vehicles operating under a permit or certificate of the Railroad Commission in the State of Texas or the Interstate Commerce Commission; and provided further that nothing in this Article shall be construed as impairing or altering in any way the provisions relating to payments in any contracts, agreements, or franchises now in existence, or hereafter made between an incorporated city or town and the owners or operators of motor vehicles transporting passengers for hire."

The pertinent sections of the ordinance under attack provide in effect; Permit for the operation of a taxicab based upon a written application therefor; inspection of taxicab by City each thirty days with approval seal attached; inspection by the City at any time it deems advisable; finding of public convenience and necessity for taxicabs before the issuance of permit which requires in addition to a showing of public convenience and necessity a showing of financial responsibility, number and type of equipment, whether use of the streets will become unsafe and any other relevant matter; permits to be renewed from year to year, said permits being personal and not transferable; the operator of each taxicab to obtain a chauffeur's license which requires the showing of applicant's name, age, present address, address and place of employment during the past two years, with reasons for leaving, whether the applicant has been convicted of a felony or has a police record, and whether the applicant is suffering from any physical disability; affidavit of two reputable citizens attesting applicant's character, a certificate of the City Health Officer certifying applicant physically fit to operate a cab, the taking of applicant's fingerprints and photograph; prohibition of operation of cab by anybody except a licensed chauffeur, payment of a $5.00 fee, placing the chauffeur's license and photograph in the cab, certain acts or failure to act authorizing cancellation of chauffeur's license and authorizing Chief of Police, in his discretion, to take up license at any time; prescribing rates and fares to be charged and maintenance of terminals by cab operators; prohibiting operators to solicit transportation of passengers arriving on trains, planes or buses, and requiring cab drivers to remain seated in cab at all times while it is at a public stand; requiring approval of all street terminals by the Chief of Police; requiring insurance with approval of policy and company issuing it by City Attorney; requiring signs on taxicabs and precluding more than six persons riding in the cab, and prohibiting cab driver from driving continuously more than twelve hours; prohibiting cruising and solicitation of passengers and carrying except at rates specified in the ordinance; requiring a rate card to be displayed in the cab; permitting cancellation of license unless cab is operated under permit ten days out of each calendar month, and assessing what is designated as a permit fee of 2% of the gross receipts payable on the 15th day of each calendar month for the preceding calendar month, upon an accom-

panying sworn statement of receipts for the preceding month; authorizing the City to inspect the books of the cab operator; requiring the installation of taxi meters; requiring the payment of all ad valorem taxes and fixing the fare to be paid and requiring the passenger to pay the same. None of the foregoing burdens is required of the vehicles carrying freight operating on the streets of the City of Waco.

Testimony was tendered to the effect that Wallace Reed was a taxicab operator residing in the City of Waco, operating twenty taxicabs, two airport buses and one railroad bus; that there are sixty-eight taxicabs operating within the City; that the ordinance under attack makes no attempt to regulate parties transporting property for hire within the limits of the City, and that such parties operating motor vehicles transporting property are governed by the general traffic regulations of the City and the general statutes applicable to all motor vehicles alike; that there are approximately 500 trucks operating on the streets of the City of Waco engaged in the business of transporting property and that approximately 100 of such trucks were engaged in such business for hire for third parties, such trucks ranging from light to heavy delivery; that the ordinance regulates all taxicabs transporting passengers for hire in the City and defines the term "taxicab" as "every automobile or motor propelled vehicle used for transportation of passengers for hire over the public streets of the City of Waco, Texas, and not over a defined or fixed route"; that parties transporting freight or merchandise in the City do so in connection with their business of selling merchandise and they do not charge a fee for the delivery; that those who transport property for hire furnish the service of loading and unloading and delivering in connection with the service of transportation and the fee or charge includes all of those services; that such parties transporting property operate eight or ten hours a day; that plaintiff and the other taxicab operators operate twenty-four hours a day; that the charges for transporting property for hire are based on weight and size of the property trans-

ported and include services other than that of mere transportation; that those engaged in transporting property differ in their manner of operation and differ in the amount of charges made; that all of plaintiff's terminals and dispatch offices are in the City of Waco and 98% of the business is wholly within the corporate limits of the City, the remaining 2% either originating or terminating in the City; that all gross receipts upon which the amount of the permit fee is based are earned while operating under permission granted by the City; that the Police Department is charged with the responsibility of enforcing this ordinance; that this department has the specific duty to investigate and approve applicants for chauffeur's license; to see that prostitutes and criminals are not transported in taxicabs; to enforce the provisions against cruising and the soliciting of passengers; to enforce the provisions regulating the number of passengers that may ride in a taxi; to make investigations to determine the convenience and necessity of terminal locations; to make inspections as to sanitary conditions of the taxi terminals; to keep taxicab stands open for use of taxicabs; to enforce the provisions prohibiting drivers from operating for more than twelve hours a day; to inspect taxicabs to see if they have been licensed and bear the seal of inspection; to see that no taxicabs are operated which have not been licensed and to investigate complaints of improper or irregular fare; to enforce the provision prescribing fares, and to enforce the provision requiring each taxicab to have numbers on them.

That the City of Waco is comprised of 28¼ square miles with 41½ miles of paved streets, 111.2 miles of squeegee streets, 72 miles of graveled streets and 7 miles of dirt streets; that approximately 130 permits have been issued for the operation of taxicabs in the City and that an average of 68 taxicabs operate daily; that between the hours of 11:00 P. M. and 7:00 A. M. approximately 50% of the work of the Police Department has to do with taxis; that there are 85 policemen employed by the City of Waco and the total budget for the Police Department is $231,133.07 per year;

that the average salary of a policeman in the City is $200.00 per month; that it will require the time of two men on each eight hour shift of six men every 24 hours, plus a relief man and an automobile to enforce the regulation of taxicab operations under the ordinance; that the cost of operating an automobile for this purpose is $100.00 per month; that such cost is exclusive of office work; that the office work of the Chief of Police averages two hours per day for taxicab regulation; that his salary is $375.00 per month; that the total man hours of the members of the Police Department consumed in enforcing the ordinance average the full time of eight men. That the office of the City Secretary has many duties to perform in connection with the regulations governing taxicab operations; that five per cent of the time of his office staff is devoted to handling taxicab matters under the ordinance and that the annual budget for this office is $14,950.00 per year; that the city employs one police and taxi mechanic at a salary of $185.00 per month and that this mechanic devotes one-tenth of his entire time to taxicabs; that the City Comptroller is employed at a salary of $325.00 per month and he has duties to perform with reference to taxicab regulations and devotes about ten hours each month to taxicab matters. That the City Attorney's office devotes about five per cent of its time to enforcing the ordinance in question and that this Department carries a budget of $763.12 per month; that the City Manager devotes about five hours per month to taxicab matters and he receives a salary of $800.00 per month; that the City maintains taxicab stands for the use of such taxis and to do so has removed six parking meters where these are located and the average daily receipts from each meter was $.60 per day and that the annual cost to the City to keep the taxicab zones painted is $97.71. The City furnishes all of the forms for applications for permits, inspection seals, fingerprint cards, photographic equipment and pays for the cost of printing notices for application for permits; that all of the offices of the City officials are housed in the Municipal Building, the operating expenses for the same

being $11,491.00 per year. That the annual budget for the Street Department is $177,-548.00, and there are approximately 9500 motor vehicles owned by persons residing in the City and the average operation of a passenger automobile is 10,000 to 12,000 miles per year; that a taxicab travels approximately 120,000 miles each year. That the permit fee levied under the ordinance yielded to the City from all taxicab operators a total of $686.00 for the month of January, 1949, and a total of $548.78 for the month of February, 1949; that these were the only two complete months between the effective date of the ordinance and the date of the trial of this case; that the work of the Police Department in enforcing the regulations pertaining to taxicabs is increased by the extent to which the taxicabs operate, and the more the taxicabs operate over the streets the greater the cost to the City of maintenance and repair. The plaintiff and the other taxicab operators, prior to the enactment of the ordinance, were operating a "jitney service" as distinguished from a taxicab service, the difference being that under the "jitney service" the vehicle stops enroute several times to pick up additional passengers before taking his first passenger to his destination, whereas under taxi service the passenger is taken directly to his destination and no additional passengers are picked up enroute. Prior to the present ordinance taxicabs operated under the zone system fixed by the City. Under this system there was inequity and lack of uniformity in fares. Under the zone system the passenger could ride as far as three miles for one fare of twenty-five cents if the trip originated and terminated within the same zone, whereas another passenger would be required to pay fares for two zones, or fifty cents, for transportation for a distance of two or three blocks if his trip originated in one zone and terminated in another. Where the taxi meters are used the fares are computed on the actual distance the passenger is transported. The taxi system is recognized as the most common and most effective means of eliminating jitney service and in assuring taxicab service; that the taxi meters required

under the ordinance will cost about $275.00 each and will last five to ten years and that the plaintiff's gross earnings annually from the operation of taxicabs in the City will be approximately $250,000.00.

Since plaintiff's cause of action is grounded upon the invalidity of a statute and a city ordinance passed under the authority therein granted, and since the rules for the construction of our statutes apply with equal force to city ordinances, we must keep in mind the general rules of construction provided by our legislature. Art. 10, Vernon's Ann.Civ.St., provides in part: Sec. "6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." Section 8 provides: "The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

■ Appellant's first point is to the effect that the ordinance does not give him the equal protection of the law guaranteed to him under our State and Federal Constitutions, because it regulates the operation of vehicles transporting passengers for hire and does not regulate the operation of vehicles transporting freight for hire, and in so doing places an undue burden upon him. We do not share this view. It is well settled that the Legislature or municipality may classify persons and objects for the purpose of legislation without violating the equal protection clause of either the Federal or State Constitution. "* * * the Legislature may classify persons, organizations, and corporations according to their business, and may apply different rules to those which belong to · different classes." See Supreme Lodge United Benev. Ass'n. v. Johnson, 98 Tex. 1, 5, 81 S.W. 18, 19, and cases there cited. It is equally well settled that "The presumption is always in favor of the validity of legislation; and if there could exist a state of facts justifying the classification or restriction complained of, the courts will assume that it existed." Nolen v. Riechman, D.C., 225 F. 812, 819. It is our view that the evidence tendered is sufficient to support the trial court's implied finding that plaintiff failed to discharge his burden of establishing that the ordinance was discriminatory. The Supreme Court of the United States in Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167, wherein a Texas statute was the subject of litigation, held outright that the· transportation of persons for hire and the transportation of property for hire need not be treated as falling within the same classification for the purpose of regulation. See also Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596; Auto Transit Co. v. City of Fort Worth, Tex.Civ.App., 182 S.W. 685, writ ref.; Fletcher v. Bordelon, Tex.Civ. App., 56 S.W.2d 313; Dallas Taxicab Co. v. City of Dallas, Tex.Civ.App., 68 S.W.2d 359.

■ Appellant recognizes the above rules but says in effect that there is no reason: For the City to require a taxicab operator to obtain a permit to operate his cab over the streets of the city for hire and not make the same requirement of the truck operator hauling freight for hire; for requiring a taxicab operator to insure his cab in a solvent insurance company and not make the same requirement of a truck operator; for requiring the taxicab operator to pay 2% of his gross earnings by way of compensation to the city for the use of the streets and not make the same requirement of truck operators inasmuch as both use the streets and subject the streets to wear and tear, and a heavily laden truck does more damage to the streets over which it travels than does a taxicab; for prohibiting cruising by taxicabs and solicitation of passengers by taxicab operators and not prohibiting cruising by trucks and solicitation of freight by truck operators; for requiring taxicab operators to buy license and permitting revocation of licenses for certain activities and not make the same requirement of truck operators; for requiring a taxicab driver to be physically fit and not make the same requirement

of a truck driver; for requiring inspection of cabs every thirty days, or at any other time desired, and not requiring the same of trucks, because a safe truck is as much to be desired as a safe cab; for requiring one operating a fleet of cabs to make a showing of public necessity and convenience, with incidental tests of who the applicant is, the number of cabs, his financial responsibility, and not requiring the same showing of one desiring to operate trucks upon the streets of the city for hire or otherwise; for fixing charges for cabs and not fixing charges for trucks; for having regulations that only six can ride in a cab and making no limitation as to the number that can ride in a truck; for requiring payment of ad valorem taxes as a condition precedent to operate cabs and not making the same requirement of truck operators; for making it a misdemeanor for passengers to fail to pay cab fares and not making the same regulation with respect to paying the man who moves furniture; for restricting cab operators to twelve hours continuous service and not making the same limitation on a truck driver We think it is sufficient answer to each of appellant's contentions to say that the legislature has the power to fix the public policy of this state (so long as it does not abridge the State or Federal Constitution—See Griffin v. McCoach, 5 Cir., 123 F.2d 550, Id., 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462) and legislate upon the matters that it believes to be for the general welfare of its citizens. If further reason is required for such legislation, we think it is sufficient to say that the city is interested in protecting the safety of the passengers who are transported for hire and is further interested in the type of service available to its citizens and those within its gates who desire such service and that transportation of persons for hire requires more supervision and regulation than freight. We think the evidence adduced tendered the issue that such regulation was reasonable and necessary (except the right to charge and collect a chauffeur's license fee hereinafter discussed) and the trial court's implied finding to this effect is in accord with our views. With reference to the matter of re-

quiring ad valorem taxes to be paid as a condition precedent to the granting of a permit, we think such regulation is reasonable and it is obvious that it does not increase the tax burden of the cab operator.

Appellant's second point is that the ordinance is void "in that (a) it undertakes to prescribe and punish as an offense acts and omissions occurring beyond the cor porate limits of the City of Waco, and (b) it undertakes to regulate and control the transportation of persons for hire beyond the corporate limits of the City of Waco and (c) it undertakes to exact a tax or charge on that portion of Reed's business carried on beyond the corporate limits of the City of Waco * * *." We overrule these contentions.

First of all, plaintiff's view places a strained construction upon the ordinanc when considered in its entirety, because it clearly shows that it was enacted for the purpose of regulating taxicabs operating under permits issued by the City of Waco within its corporate limits. In the second place no evidence was tendered to the effect that the City has or will attempt to regulate and control transportation of per sons for hire beyond its corporate limits, nor that the City has or will attempt to pre scribe and punish as an offense acts o omissions occurring beyond such limits. Moreover, all of the taxicabs operated by the plaintiff under the permits granted to him move over and across the streets of the City of Waco in all operations transporting passengers for hire. No fares or gross receipts are earned or collected by plaintiff from operations wherein the taxicabs earning such fares do not move over some portions of the streets of the City, and no fares or receipts are earned or collected in operations wherein it is not necessary for the taxicabs earning such fares to operate under a permit granted to the plaintiff. Plaintiff's place of business and his terminals are all located in the City. It is true that some of plaintiff's operations carry him beyond the City limits, but 98% of plaintiff's operations are exclusively within the corporate limits and plaintiff's operations to the airport and the railroad station begin and end in the City. The

calls for such service come into the City and the airport is now in the City and the Missouri-Pacific railroad station is just outside the City.

The same rules of construction apply to municipal ordinances as apply to statutes. See 37 Amer.Jur. 826, 39 Tex. Jur pp. 209, 212, sec. 13. "In construing statutes it is the duty of the court to ascertain the legislative intent, and, when such intent is once arrived at, it should be given effect; in fact such intent is the law. In determining the legislative intent, the court should not look alone to any one phrase, clause, or sentence of the act, but to the entire act; and this includes the caption, the body of the act, and the emergency clause." Popham v Patterson, 121 Tex. 615, 51 S.W.2d 680, point page 683. The holding of our Supreme Court is in accord with the provisions of Article 10 of the statute heretofore quoted. The application of these rules answer adversely appellant's contentions in his second point. See also Magnolia Petroleum Co. v. Walker, 125 Tex. 430, 83 S.W.2d 929; 50 Amer. Jur. 200; 30 Tex.Jur. pp. 217, 218; 39 Tex. Jur. 251; 50 Amer.Jur. p. 510, sec. 847; 11 Amer.Jur. 733; City of Wichita Falls v. Bowen, 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434; Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 871, 874. It is worthy of note that in this last case the Supreme Court said: "It was clearly the intent of the Legislature that each incorporated city, in granting licenses to those desiring to do a taxi business within the city, be left to regulate that business not only within its corporate limits but within its suburbs as well; and we so hold."

Appellant's third point is: "Section 20 of the ordinance * * * is void because it is an occupation tax and the legislature cannot authorize a city to levy an occupation tax for city purposes where it has not levied such a tax for state purposes, perforce of Art. 8, Sec. 1 of the Constitution of Texas, and because it is not equal and uniform in its application and, therefore, in violation of Art. 8, Sec. 2 of the Constitution of Texas and of the equal protection and due proc-

ess clauses of the 14th Amendment to the Constitution of the United States * * *."

Appellant's third point is based upon the assumption that the permit fee is an occupation tax. We are not in accord with that view. The permit fee based on gross receipts is not invalid because the ordinance does not expressly limit the permit fee to 2% of the gross receipts earned exclusively in the City limits. That is necessarily true by reason of the quotation from the case of Villalobos v. Holguin, supra. Moreover, the City is expressly authorized to levy and collect such fee for the operation of taxicabs under Art. 6698, supra, hereinabove quoted. The ordinance, by its terms, shows that it is in compliance with the above statute in this behalf and since we are of the opinion that such statute is in all respects valid under our rules of construction and the decisions of our courts heretofore cited, we think this point need not be labored. See Ex parte Beck, 92 Tex.Cr.R. 20, 241 S.W. 172; City of Graham v. Seal, Tex.Civ.App., 235 S.W. 668; McQuillan on Municipal Corporations, Vol. 3, p. 660; Fleming v. Houston Lighting & Power Co., 135 Tex. 463, 138 S.W.2d 520; State ex rel. Griffin v. Greene, 104 Mont. 460, 67 P.2d 995, 11 A.L.R. 770, 775; City of Wichita Falls v. Bowen, supra; Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481; 40 Tex.Jur. p. 82; 39 Tex.Jur. 205; Davis v. Estes, Tex.Com.App., 44 S.W.2d 952; Eppstein v. State, 105 Tex. 35, 143 S.W. 144; Spears v. City of San Antonio, 110 Tex. 618, 223 S.W. 166. Because it is our view that the City had the right to make the classification it made under the terms of Art. 6698, supra, our view is that there was no evidence tendered that the ordinance is not equal and uniform in its application to taxicab operators. Moreover, we are in accord with the trial court's judgment which in effect finds that the permit fee fixed by the ordinance is not an occupation tax. We think the evidence tendered is ample to support such implied finding of the trial court. It is well settled that a municipality has the right, in the exercise of its police power (unless a statute is contravened), to fix such permit fee

as is provided for in the ordinance. See 40 Tex.Jur. 32; McQuillin on Municipal Corporations, Vol. 3, pp. 647, 686; Ex parte Gregory, 20 Tex.App. 210, 54 Am.Rep. 516; Hirshfield v. Dallas, 4 Willson Civ.Cas.Ct. App. § 177, 15 S.W. 124; City of Fort Worth v. Gulf Refining Co., 125 Tex. 512, 83 S.W.2d 610; Brown v. City of Galveston, 97 Tex. 1, 75 S.W. 488; ABC Storage & Moving Co. v. City of Houston, Tex. Civ.App., 269 S.W. 882; 33 Amer.Jur. 326; Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896, 899. In the last mentioned case our Supreme Court announced this general rule: "It is sometimes difficult to determine whether a given statute should be classed as a regulatory measure or as a tax measure. The principle of distinction generally recognized is that when, from a consideration of the statute as a whole, the primary purpose of the fees provided therein is the raising of revenue, then such fees are in fact occupation taxes, and this regardless of the name by which they are designated. On the other hand, if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes." (Citing many cases.) Since every finding of fact necessary to support the judgment must be presumed to have been found by the trial court, it must be presumed that the trial court found that the fees do not exceed the regulatory costs and that the fee was prescribed as a regulatory measure and not as a revenue measure. We are in accord with such view.

Appellant's fourth point is: "Section 20 of the ordinance * * * is void because the right granted under other sections of the ordinance to Reed to use the streets of the City of Waco is a franchise, and the exercise of the right granted under other sections of the ordinance to use the streets of the City of Waco by Reed converted the franchise so granted into an easement, and an easement is real property, which perforce of Art. 8, Sec. 1 of the Constitution of Texas must be taxed in proportion to value which is not done in the ordinance in Sec. 20 * * *."

We think appellant's fourth point assumes a factual situation contrary to the record and for that reason it is overruled. Our view is that the plaintiff, by taking out a permit fee under the terms of the ordinance, did not acquire a franchise in the streets and that he did not have a property interest in the streets of the City within the meaning of the term "property" as used in Sec. 1 of Art. 8 of the Constitution of Texas requiring property to be taxed uniformly and in proportion to its value, and the trial court correctly held that Sec. 20 of the ordinance is valid and does not violate any provision of our Constitution. See City of Dallas v. Gill, Tex.Civ.App., 199 S.W. 1144, writ ref. 19 Tex.Jur. 876–880 incl.; Payne v. Massey, 145 Tex. 237, 196 S.W.2d 493, point page 495.

Appellant's fifth point is: "The provisions of Art. 6698 are repugnant, inconsistent and contradictory, in that said Article provides that 'nothing herein shall in anywise authorize or empower any incorporated city in this State to levy and collect any occupation tax or license fee on motor vehicles' and in the next succeeding sentence provides 'that such cities are hereby authorized and empowered to levy and collect a city permit fee, not to exceed 2% of the gross receipts per annum, for the operation of each motor vehicle transporting passengers for hire or a street rental charge based upon gross receipts, not to exceed 2% per annum, for the operation of motor vehicles transporting passengers for hire' and Section 20 of the ordinance of Dec. 21, 1948, being based upon said contradictory statute, is also void, and since the statute does not contain the usual separation clause, the entire act is void * * *." We overrule these contentions.

We have previously quoted the statute as amended. It is clear that the Legislature amended the statute for the purpose of giving to cities the right to charge a permit fee for motor vehicles used in carrying passengers for hire, which right was denied prior to the amendment. Payne v. Massey, supra; City of Corpus Christi v. Crow, Tex.Civ.App., 204 S.W.2d 678, and cases therein cited. We have previously cited the rules as to construction of statutes. These are applicable here. We think the

provisions of the statute as amended are clear and that the intention of the legislature must be given effect. 39 Tex.Jur. 166, par. 74; also 39 Tex.Jur. pp. 139, 159, 191 and 212; Campbell v. Wiggins, 85 Tex. 424, 21 S.W. 599; Knight v. Chicago Corp., 144 Tex. 98, 188 S.W.2d 564; Gulf Ins. Co. v. James, 143 Tex. 424, 185 S.W.2d 966; Ex Parte Gregory, 20 Tex.App. 210, 54 Am. Rep. 516.

Appellant's sixth point is: "Section 22 of the ordinance * * * requiring the installation of meters, is unreasonable and violates the due process clause of the Constitution of Texas and of the United States * * *." We overrule this contention.

■ We think the evidence tendered was ample to support the implied finding of the trial court that the requirement as to the installation of taxi meters was reasonable. First of all, the City of Waco, being a home rule city, has such power under Sec. 21 of Art. 1175, Vernon's Ann.Civ.St. Our Supreme Court has upheld the right of municipalities to fix minimum rates to be charged by taxicabs. Parsons v. City of Galveston, 125 Tex. 568, 84 S.W.2d 996. For general rule see 11 Amer.Jur. 1081, sec. 305. See also Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596; City of Wink v. Wink Gas Co., Tex.Civ.App., 115 S.W.2d 973, writ ref.; McKenna v. City of Galveston, Tex.Civ.App., 113 S.W.2d 606; Vol. 1, Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 107; General Heading of "Fares, Rates and Tariffs in General" and under heading "Taxicabs" in Vol. 1, Blashfield's Cyclopedia of Automobile Law and Practice, § 111; Denver Tramway Corp. v. People's Cab Co., D.C., 1 F.Supp. 449; McGill v. City of St. Joseph, 225 Mo.App. 1033, 38 S.W.2d 725; Yellow Cab & Baggage Co. v. Public Cars, 126 Neb. 138, 253 N.W. 80; Co-operative Cab Co. v. City of Seattle, 151 Wash. 150, 275 P. 80.

Appellant's seventh point is: "Sections 5 and 6 of the ordinance * * * are illegal because they are contrary to a general law on the same subject * * *." We think this contention must be sustained insofar as they are in conflict with the pro-

visions of our state law regulating these matters.

Pertinent to this discussion Section 5 of the ordinance provides in substance that no person shall drive a taxicab on the streets of the City unless he shall first obtain a chauffeur's license to be issued in this City. It further provides that after the license is granted the tax assessor shall issue the license to the applicant for a fee of $5.00. Section 6 provides in effect that a chauffeur's license may be revoked by the Chief of Police, or the Board of Commissioners, for certain infractions specifically named in the section, and also further provides that the Chief of Police, in his discretion, may take up the license at any time and revoke it, but with right of appeal from the decision of the Chief of Police to the Board of Commissioners within ten days from date license is revoked.

■ Article 6687b, as amended in 1943, is controlling as to chauffeur's license. Section 1 under Article 1 defines words and phrases used therein. Section 2 under Article II specifies who shall have licenses to drive motor vehicles. Subdivision (c) of the foregoing section provides: "No person holding an operator's commercial operator's, or chauffeur's license duly issued under the provisions of this Act shall be required to obtain any license for the operation of a motor vehicle from any other State authority or department." Article III under the above statute deals with the subject of fees and the expiration of licenses and fixes a chauffeur's license at $3.00. Article IV of the above statute deals with the cancellation, suspension and revocation of licenses. Article V provides for accident reports, and Article VI prescribes the penalty. The foregoing statute has dealt in great detail with the subject of licenses for operators of motor vehicles and seems to emphasize substantially every phase covered in the ordinance and additional requirements not pertinent here. It is pertinent to note that said statute expressly provides that a person holding a license under the provisions of the above statute shall not be required to obtain a license from any other state authority

or department. See Art. II, Sec. 2, subdivision (c) above quoted. In Payne v. Massey, supra, our Supreme Court had under consideration the construction of Art. 6698, prior to its amendment, and said [145 Tex. 237, 196 S.W.2d 497]: "There is no doubt that under Sections 12, 20, and 21 of Art. 1175, Vernon's Ann.Civ. St., the City of Houston is authorized to regulate, license, and fix charges or fares to be made by any person owning, operating or controlling any vehicle of any character used for the carrying of passengers for hire, or the transportation of freight for hire on the public streets of the city. But in view of the provisions of Art. 6698, Vernon's Ann.Civ.St., *the power of the municipality to license motor vehicles does not include the authority to charge a fee for that license.*" Our Legislature, in amending this statute, provided that such cities or towns are authorized and empowered to levy and collect a city permit fee not to exceed two per cent of the gross receipts per annum for the operation of each motor vehicle transporting passengers for hire on the streets of the city, but the power given to the municipality to fix and collect the permit fee aforesaid did not include the authority to charge a fee for chauffeur's licenses. As we understand the opinion of the Supreme Court in the above case, we think the rules and regulations of the City for the governing of motor vehicles within its corporate limits must not conflict with the statutes relating to such rules and regulations, and in no event can the City charge and collect a fee for a chauffeur's license. Section 5 of Article 11 of the Constitution of Texas provides in part in effect that neither city Charter nor ordinance based thereon shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the Legislature of the state. Our view is that the regulations of the ordinance as to chauffeur's licenses, insofar as they are in conflict with Art. 6687b aforesaid, are necessarily invalid.

But appellee contends that since neither the pleadings nor the evidence show that plaintiff drives a taxicab or desires to do so, that there is no justiciable controversy between plaintiff and the City with reference to Sections 5 and 6 of the ordinance. We are not in accord with this view. Appellant, in his pleadings, specifically attacked each and every provision of the ordinance (see paragraph 4 of his original petition). In paragraph 13 of said pleading he specifically alleged that Sections 5 and 6 are void in that they contravene the provisions of Article 6687b of Vernon's Ann.Civ.Stats. of Texas. Plaintiff's pleading in this behalf was not attacked by special exception. See Rules 90 and 91, Texas Rules of Civil Procedure. The entire ordinance was tendered in evidence and Section 5, among other things, provides: "No taxicab shall be operated by anyone except a licensed chauffeur." The evidence is without dispute that plaintiff was in the business of operating taxicabs when the ordinance was passed, and that he desires to continue such service; that he operates twenty taxicabs, two airport buses and one railroad bus, and that he maintains a twenty-four hour service in connection with his taxicab business. Under the provisions of the above sections of the ordinance, the plaintiff cannot put his taxicabs on the streets in the pursuit of his business unless the drivers obtain a chauffeur's license under the provisions of the above ordinance. The failure of each driver to obtain such chauffeur's license from the City would, under the provisions of the ordinance, subject him to arrest and would necessarily interfere with the plaintiff in the operation of his business. Assuming that plaintiff has complied with all the provisions of the ordinance save and except Sections 5 and 6, he has a right to pursue his business without having the drivers interfered with by the City. We think the pleadings and the evidence are ample to tender the issue that plaintiff does have a justiciable interest in this matter.

It follows from the views heretofore expressed that the court's judgment, insofar as it holds that the City has a right to charge and collect a fee for chauffeur's license, must be reversed and rendered. The

258

judgment of the trial court in all other respects is affirmed.

Affirmed in part; reversed and rendered in part.

LESTER, C. J., took no part in the consideration and disposition of this case.